206

THE STATE OF OHIO, APPELLEE, *v.* TOTH, APPELLANT.

(No. 77-217—Decided December 28, 1977.)

Mr. *David E. Lighttiser,* prosecuting attorney, and *Mr. Robert L. Becker,* for appellee.

Mr. *John I. Peters,* for appellant.

## I.

*Per Curiam.* In his first proposition of law, the appellant contends that: (1) the trial court erred in instructing the jury that the appellant had the burden of proving insanity and disabling intoxication by a preponderance of the evidence; (2) the appellant's failure to object to such instruction did not automatically prevent him from raising the error on appeal, where the error critically affected his substantial rights; and (3) the charge to the jury imposing upon the appellant the burden of proving insanity and intoxication or drug influence by a preponderance of the evidence deprived him of due process of law as guaranteed by the United States Constitution.

The Court of Appeals, although finding that the trial court had improperly placed upon the defendant a higher degree of proof than necessary to successfully raise the issues of intoxication and insanity under R. C. 2901.05, held that there was no prejudicial error, since there was insufficient evidence to even raise those questions. We affirm the judgment.

It is a well-established rule in Ohio that the defense of insanity cannot be successfully established simply on the basis that the condition resulted from the use of intoxicants or drugs, where such use is not shown to be habitual or chronic. Paragraph three of the syllabus in *Rucker* v. *State* (1928), 119 Ohio St. 189. See, generally, Annotation,

8 A. L. R. 3d 1236, Section 6 (b). In the instant cause, the record reveals that the only evidence supporting the claim of insanity was the testimony provided by Doctor Allen Sherrow, who stated that at the time of the crime the appellant suffered from a condition of temporary insanity induced by a combination of drugs and alcohol.

The record includes the following exchange on cross-examination of Doctor Sherrow:

"Q. * * * you had to accept as fact that he was extremely intoxicated and that he did in fact take 2 sopors and that was the basis of your formulating your opinion, is that correct?

"A. He described * * * [pause]

"Q. Is that correct Doctor?

"A. Yes.

"Q. But if it were in fact that he was not intoxicated and he did not take 2 sopors, then what Doctor?

"A. Then he could not be insane as I had formulated."

Thus, no jury instruction on the issue of insanity was warranted.

With respect to the appellant's assertion that he was incapable of forming criminal intent due to intoxication, the record reflects that all the witnesses who observed the appellant either before, during, or after the crime, excluding Mrs. Toth, testified that the appellant demonstrated no signs of intoxication or drug influence. Moreover, despite the fact that Mrs. Toth testified that her husband was extremely intoxicated when he arrived home shortly after the time of the crime, she revealed that he had given her specific instructions which included hiding the car, not asking any questions, nor revealing his whereabouts. Although Doctor Sherrow testified on cross-examination that the appellant could have suffered from a black out from the time he left the parking lot of the Rock Palace until the time he returned home, such opinion fails to explain how the appellant, upon returning to the Toy Box Bar, had remembered the three girls and what had been done to his headlights, and does not explain the appellant's concern over

his discovery upon returning home that night.

Because the record reflects that the appellant failed to introduce sufficient evidence concerning the issue of whether he was intoxicated at the time of the crime, there was no need to instruct the jury on the issue.

Therefore, we conclude that it was proper for the Court of Appeals to hold that the trial court, despite the fact that it gave improper jury instructions concerning intoxication and insanity, did not commit reversible error. See *Fowler* v. *State* (1965), 237 Md. 508, 206 A. 2d 802; *People* v. *Spencer* (1963), 31 Cal. Rptr. 782, 383 P. 2d 134.

Because of the above holding, this court need not discuss the remaining issues raised in appellant's proposition of law number one.

Appellant's proposition of law number one is overruled.

## II.

In his second proposition of law, the appellant contends that the evidence fails to show beyond a reasonable doubt that the murder of Terri Singleton was committed with prior calculation and design.

The defense contends that the shootings took place as a result of a spontaneous act, done in response to certain remarks made by Patricia Zinck to the appellant, and not as the result of a prior plan. The defense bolsters this argument by contending: that there was little evidence to show a prior animosity, or even acquaintance, between the appellant and the three girls; that the word "waste," which the appellant apparently used to describe what he intended to do about those who had tampered with his car's headlights, was inconclusive to show on the part of the appellant a specific intent to take a certain type of action against those responsible; that the appellant, having consumed a large amount of drugs, was severely impaired in terms of judgment, and in effect was temporarily insane; and that, even if one were to assume that the appellant had planned an attack or killing upon discovering that his

car's headlights had been tampered with, he had insufficient time to deliberate about his future course of action. We disagree with all of the above contentions.

The record clearly discloses that there was sufficient substantial evidence to support the jury verdict that the appellant had shot the three girls with prior calculation and design.

Prior to the shootings at the Toy Box Bar, the appellant had encountered the three girls on two separate occasions, where the evidence discloses that the appellant had visited with Terri. On these occasions, the record reflects that the girls left the bars to avoid the appellant. Prior acquaintance and animosity were sufficiently demonstrated.

With respect to the words used by the appellant on the parking lot of the Rock Palace to the effect that he would "waste" those responsible for tampering with his headlights, the subsequent actions of the appellant after making the statement support the jury finding that the appellant had, before firing the fatal shots, formed an intent and plan to kill the three girls. On the parking lot of the Rock Palace, appellant was apparently in a state of anger. Upon leaving the lot, the appellant returned to the Toy Box Bar, approximately one mile away. Upon entering the bar, he directly walked up to the three girls, and accused them of the prank. The record discloses that the appellant had two opportunities to alter his course of action upon arrival at the bar—first, when he dropped the gun initially, and second, when he picked up the gun, fired, and missed. Instead, the appellant grabbed Patricia by the hair, held the gun up to her jaw, and fired, and then proceeded to shoot Terri and Kathy as well. The appellant's method of shooting the three girls as well as his apparent determination to follow through on a specific course of action, sufficiently supports the finding that the appellant had adopted a plan to kill.

Upon the record before us, we reject the claim that there was insufficient evidence to demonstrate that the ap-

pellant could have formed the specific intent, and adopted a plan, to kill the three girls.

Concerning the proposition that there was insufficient time for deliberation by the defendant to justify the jury's finding of prior calculation and design under the new standard for premeditated murder set forth in R. C. 2903.01 (A), it should suffice to say that the court is well aware that under the new Criminal Code provisions, momentary deliberation, or acts done on the spur of the moment, are no longer sufficient to demonstrate premeditated murder. See *State* v. *Jenkins* (1976), 48 Ohio App. 2d 99; Committee Comment to R. C. 2903.01. See, also, Comment, Reflections on the Proposed Ohio Law of Homicide, 33 Ohio St. L. J. 422, 429. However, this court is not compelled at this time to explore the effect of the changes in the wording of the statute on current Ohio law, since in the instant cause the record overwhelmingly reflects that the appellant had sufficient time to deliberate and formulate a plan.

Appellant contends further that the prosecution failed to prove the cause of Terri Singleton's death beyond a reasonable doubt. The appellant states that the testimony of the county coroner was so conflicting in regard to the events directly preceding the death of Terri on June 9, 1975, that the coroner's testimony concerning the cause of Terri's death was highly suspect as well.

At trial, although the county coroner repeatedly testified that, in his opinion, Terri's death was the direct result of the gunshot wound inflicted by the appellant, he appeared to have contradicted himself in answering questions concerning the events that took place at the hospital on the day of Terri's death. For example, the coroner testified that he had learned from Terri's family and the hospital staff that Terri suffered a black out spell at about 2:00 p. m. and was given the anti-coagulant drug Cumidin shortly thereafter. However, upon cross-examination the following day, the doctor denied the fact that he testified that Terri received treatment between the hours of 2:00 p. m. and 4:00 p. m., and later claimed that he was respond-

ing to a hypothetical question in which he was asked to assume that the patient was suspected of suffering from a blood clot at 2:00 p. m. on June 9th.

Although the testimony of this expert witness appears self-contradictory, it should be noted that the county coroner's conflicting statements involved collateral issues such as the quality of care the victim received before her death, as opposed to the relevant issue concerning the direct cause of her death. Furthermore, the record reflects that the county coroner performed a thorough and satisfactory autopsy.

Appellant's second proposition of law is overruled.

### III.

In his third proposition of law, the appellant challenges the trial court's inquiry into the veniremen's beliefs concerning capital punishment. Of the 55 prospective jurors questioned in *voir dire,* eight veniremen to some degree indicated that they were opposed to capital punishment. Two of these prospective jurors were later excused by the court on the basis of preemptory challenges made by the prosecution, one was seated as a juror, and the remaining five were excused for cause. The record shows that of these remaining five veniremen, two admitted that because of their strongly held beliefs against capital punishment, they could not serve as fair and impartial jurors; one indicated specifically that she should not serve as a juror in the cause; and two, while indicating that they could put aside their individual reservations about capital punishment, expressed doubts that they could remain fair and impartial.

The court finds that no error was committed either in the trial court's questioning of the prospective jurors concerning their views on capital punishment (*State* v. *Bayless* [1976], 48 Ohio St. 2d 73, at pages 87-94), or in its dismissal for cause of the five prospective jurors who had expressed doubts concerning their ability to serve as fair and impartial jurors (*State* v. *Roberts* [1976], 48 Ohio St. 2d 221, at pages 222-223).

Appellant's third proposition of law is overruled.

## IV.

In his fourth proposition of law, the appellant attacks the constitutionality of Ohio's death penalty procedures. Because this court has already addressed similar issues as those raised by the appellant in his brief, further discussion is not merited.[1]

Appellant contends further that the trial court committed reversible error by incorrectly holding at the mitigation hearing that the appellant had the burden of establishing one of the mitigating factors mentioned in R. C. 2929.04(B) by a preponderance of the evidence to avoid the sentence of death. We agree.

In paragraph one of the syllabus in *State v. Downs* (1977), 51 Ohio St. 2d 47, this court held that the mitigation hearing conducted under the provisions of R. C. 2929.-03 is not an adversary proceeding, and that neither the defendant nor the prosecution has the burden of producing any evidence of mitigating circumstances. The court made clear that at the mitigation hearing the defendant only bears the risk of nonpersuasion. Paragraph five of the syllabus in *Downs, supra.*

In the instant cause, the trial judge improperly placed on the defendant the burden of proving one of the mitigating circumstances. Because of this action, the proceedings at the mitigation hearing were infected with an ad-

---

[1]Appellant contends that the death penalty is *per se* cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Section 9, Article I of the Ohio Constitution, see *State v. Bayless* (1976), 48 Ohio St. 2d 73, 79; that, as administered, the death sentence is cruel and unusual because it falls arbitrarily upon a select few, see *State v. Weind* (1977), 50 Ohio St. 2d 224, 227; that the Ohio statutory scheme fails to provide an informal, focused, guided, and objective inquiry into the question of whether a defendant should be sentenced to death, see *State v. Black* (1976), 48 Ohio St. 2d 262, 267; *State v. Bell* (1976), 48 Ohio St. 2d 270, 280; *Weind, supra,* 225; and *State v. Miller* (1977), 49 Ohio St. 2d 198, 203; that placing the burden upon the defendant to prove mitigation in order to save his life deprives him of due process, see *State v. Downs* (1977), 51 Ohio St. 2d 47, 59; and that the Ohio death penalty procedure violates the constitutional law on mandatory death penalties, see *Bayless, supra,* at page 86; and *Weind, supra,* at page 225.

versary atmosphere, which may have adversely affected the proper outcome. We, therefore, reverse that part of the judgment of the Court of Appeals which affirmed the sentence and remand the cause to the trial court for further proceedings consistent with this opinion.

## V.

In his fifth proposition of law, the appellant argues that R. C. 2903.01, by permitting a conviction for aggravated murder to rest solely upon a finding that the defendant acted purposely and with prior calculation and design, without also requiring a finding of malice aforethought as required under former Ohio law, violates his substantive due process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

This argument is without merit. In *Patterson* v. *New York* (1977), —— U. S . ——, 53 L. Ed. 2d 281, the Supreme Court of the United States expressly upheld the right of the state of New York to exclude malice aforethought as one of the elements of the crime of second degree murder. The court stated at page 286:

"It goes without saying that preventing and dealing with crime is much more the business of the States than it is of the Federal Government, *Irvine* v. *California*, 347 U. S. 128, 134 (1954) (plurality opinion), and that we should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual States."

Furthermore, as already indicated above, R. C. 2903.-01(A) is designed to exclude the concept of only an instant's prior deliberation, thus affording the defendant additional protection from prosecution on a first degree murder charge.

Appellant urges further that R. C. 2903.03(A) unconstitutionally places upon the defendant the burden of persuading the jury beyond a reasonable doubt that the defendant acted under extreme emotional distress. *Mullaney* v. *Wilbur* (1975), 421 U. S. 684. Appellant's argument is completely without merit.

R. C. 2903.03(A) provides:

"No person, while under extreme emotional distress brought on by serious provocation reasonably sufficient to incite him into using deadly force, shall knowingly cause the death of another."

Nowhere does this provision place upon the defendant the burden of proving a mitigating circumstance, which also is an element of the crime charged (a situation expressly prohibited in *Mullaney*); rather, the prosecution must prove beyond a reasonable doubt that the defendant knowingly caused the death of another while under extreme emotional distress brought on by a serious provocation. Simply because the element of extreme emotional distress may reduce the seriousness of the offense charged from aggravated murder to voluntary manslaughter, does not, *per se,* make such element an affirmative defense or mitigating factor to be proved by the defendant. Although it may aid the defense to introduce evidence showing emotional distress, it clearly is not required.

Appellant's proposition of law number five is therefore overruled.

In conclusion this court holds the following:

The judgment of the Court of Appeals with respect to the conviction of the appellant is affirmed.

However, because the trial court improperly placed upon the appellant the burden of proving one of the mitigating factors mentioned in R. C. 2929.04(B) by a preponderance of the evidence, the judgment of the Court of Appeals affirming the death sentence of the appellant is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment affirmed in part and reversed in part.*

O'NEILL, C. J., HERBERT, W. BROWN and SWEENEY, JJ., concur.

CELEBREZZE and LOCHER, JJ., concur in the judgment.

P. BROWN, J., dissents.

PAUL W. BROWN, J., dissenting. The evidence of drunkenness or narcosis presented at this trial had no tendency to show lack of criminal intent which is the only relevance of such evidence. On the contrary, the acts of the defendant unequivocally demonstrateed his malicious purpose.

There is no claim that pre-sentence investigation and examination were not made, not reported or not considered as required by R. C. 2929.03(D) and (E), and R. C. 2929.04(B).

The circumstances of the crime as developed by the evidence had no tendency to show that "the offense was primarily the product of the offender's psychosis or mental deficiency." Where this is the state of the record and absent any failure by the court to fulfill its duties under R. C. 2929.03(D) to hear testimony, statements of the defendant, statements of counsel for the defense and for the prosecution, and to receive other evidence relevant to the penalty which should be imposed on the offender in this non-advisory inquiry, the defendant loses. This is because he bears the risk of persuasion and no mitigating circumstance or condition has appeared. With this in mind, the trial court's discussion on this issue of "burden of proof," although the term is ambiguous as we said in *Downs*,[2] was an irrelevant, non-prejudicial aside. I cannot see what useful purpose a remand will accomplish.

I would affirm the conviction and sentence.

---

[2]*State* v. *Downs* (1977), 51 Ohio St. 2d 47.