THE STATE OF OHIO, APPELLEE, *v.*
MATHIS, APPELLANT.

(Nos. CA 8367 and 8497—Decided April 3, 1984.)

*Mr. Lee C. Falke,* prosecuting attorney, and *Mr. Ted E. Millspaugh,* for appellee.

*Mr. Michael R. Eckhart,* for appellant.

MCBRIDE, J. Case No. 8367 is an appeal by Rodney A. Mathis, who was found guilty of the aggravated murder of Jeffrey Herman and of attempted aggravated murder of Gilda Mathis, committed on November 21, 1982. Case No. 8497 is from a denial of a motion for new trial. The two were consolidated in this court.

Counsel for appellant listed three assignments of error. The last two will be first considered and the first assignment, relating to the motion for new trial, will be considered last.

The appellant filed *pro se* a separate brief listing three assignments claiming constitutional errors. These will be separately considered.

The appellant-defendant was married to Gilda Mathis. The couple had separated and were living apart for two weeks. On the day before the shootings, Gilda moved from her parents' home where she had been staying, into her own apartment where the incident took place. She was assisted in the move by

Jeffrey Herman who stayed with her the first night in the first floor apartment. There were no curtains or cover of any kind in the living room and a sheet was used for the bedroom window. The couple was observed sharing advances in the living room until they retired.

Early that evening, appellant appeared in the area of the apartment. He drove his vehicle repeatedly in the apartment area, he entered the hallway several times and was seen by Gilda Mathis staring into the front window. Neighbors observed the defendant acting in a suspicious manner in and out of the building from 7:00 P.M. until 3:30 A.M. One phoned the police, who did not respond because nothing had happened. About 11:30, another neighbor observed a man, dressed like the defendant, return to a car, angry and saying: "You are going to die." That evening, the defendant phoned Gilda's parents and advised them that he had taken Gilda's car. The details of the noise and disturbances through the night, culminating in the morning with shots, sounds of violence and screams for help at about 7:00 A.M. are repeated by many of the neighbors and are summarized with references in appellee's brief.

Herman was struck on the head with a blunt instrument, shot in the head and found dying in the hallway outside the apartment. A man was observed pulling Gilda back into the apartment where a struggle ensued with screams for help. Gilda also was struck and shot in the face but survived, permanently disfigured. The intruder fled.

There is no doubt as to the identity of the intruder. He was identified by witnesses and by Gilda, who testified. She related that on the morning she and Herman dressed for their military assignments, Herman left to get cigarettes from his car. Next, she discovered the appellant, her husband, at the door with a shotgun and a crowbar (a tire tool). He said: "I'm going to kill you."

He struck her on the head. As she screamed and they struggled in the bathroom, he shot her in the face with the shotgun.

Around 8:00 A.M. that morning, the defendant again phoned Gilda's mother. He told her he had just killed Gilda and her friend and that he was going to kill himself.

The appellant owned the shotgun and the tire iron was traced to his car.

Several days later, the appellant, operating Gilda's Buick, was pursued by the police at speeds in excess of one hundred miles per hour. He failed to stop at a roadblock and crashed into a utility pole. He became violent despite his injuries which, according to Warren D. Shea, a psychologist, who was the only witness for the defendant at trial, produced a memory loss of the events of the shooting and of the accident in the Buick.

A defense of insanity was filed but withdrawn at trial with the defendant's consent because there was no "psychiatric, psychological opinion upon which to base the plea."

"[2.] The trial court erred in not giving an instruction on voluntary manslaughter and self-defense as to Jeffrey Herman."

The trial court gave an instruction on the lesser offense of murder, but refused requests on voluntary manslaughter and self-defense.

Appellant concedes that self-defense would not apply to the shooting of Gilda Mathis. He argues that the jury "could possibly" conclude that the deceased came at him with a pistol and tire iron, that the two struggled and appellant shot Herman in self-defense. Herman is dead and appellant did not take the stand. There are no facts or circumstances justifying submission of an issue of self-defense. The weapons were traced to the appellant. *State* v. *Melchior* (1978), 56 Ohio St. 2d 15 [10 O.O.3d 8]; *State* v. *Robbins* (1979), 58 Ohio St. 2d 74 [12 O.O.3d 84].

On the question of submitting an instruction on voluntary manslaughter, the appellant argues that evidence of prior calculation and design was insufficient. The answer is that, if that be so, the court did instruct on the lesser offense of murder; which does not require prior calculation. This element was established in threats to kill, repeated hours apart.

Despite the evidence of a prior decision to kill, the appellant did not go forward with any evidence of emotional stress. The appellant was aware of Herman's presence early in the evening before the shooting. This is the only suggestion appealing to the emotions. The couple had separated and discussed the dissolution route. Under these circumstances and the lapse of about twelve hours, there is no issue of sudden passion or emotion and no evidence of more extended conditions that might provoke emotional stress sufficient to justify a determination to kill under stress. *State* v. *Muscatello* (1978), 55 Ohio St. 2d 201 [9 O.O.3d 148].

The second assignment of error is denied.

"[3.] The jury's verdict of attempted aggravated murder and aggravated murder were against the manifest weight of the evidence."

There is in the record direct testimony as well as overwhelming circumstances of prior calculation and design, as required by R.C. 2903.01(A). The verdict of the jury may not be reversed, even if there may be some conflict or variation in the testimony. *State* v. *Eley* (1978), 56 Ohio St. 2d 169 [10 O.O.3d 340]; *State* v. *Robbins, supra.*

There is no merit in the third assignment of error.

"[1.] The trial court erred and abused its discretion in overruling defendant's motion for new trial."

A motion for new trial was filed based upon the discovery of new evidence as a result of a "substantial" recall of memory which he had lost at the time of trial as a result of brain surgery after his vehicle collision. His affidavit on the motion recites that at the time of the trial he could not "fully recall" events surrounding the shootings.

A hearing was held on the motion for new trial. Warren D. Shea, the same psychologist who testified at trial, said that appellant experienced traumatic amnesia; that normally a person will regain some memory and that the maximum recovery time is approximately one year after the injury; that those who recover will regain about ninety percent of the cognitive faculties; and that within the realm of probability, appellant would have started regaining his memory within a period of twelve months after the accident. He also said the period of time would be longer where there was a necessity for medical intervention.

The appellant testified that on the evening in question he followed his wife from work to her new apartment, saw her enter, checked the mailbox and shortly left. He returned about 7:30 P.M. and saw his wife making love with a man. He said he saw into the bedroom, pounded on the bedroom window but she paid no attention and he left. He said he returned about 6:30 A.M. and saw them getting out of bed together. He went to her apartment and eventually his wife let him in. After stepping in, a man came down the hall charging him with a gun in one hand and a wrench in the other; and when struck in the ribs, appellant reached for his shotgun which he saw standing against the wall and shot him. His wife started yelling, "Don't kill me," and he followed her into the bedroom where they wrestled — and then he left. He denied any recollection of shooting his wife. The man was lying on the floor of the living room, he believed. Four days later, he had brain surgery as a result of the vehicle accident. He said he was in shock from seeing his wife with another man. He remembered nothing

after the accident and his memory started coming back within the last two months (of the hearing). He said he remembered everything presented at the trial, but did not remember anything as to the shootings other than what he told the court. He said he had no recollection respecting the vehicle accident. He admitted he could not fully recall what happened at the time of the shootings. He admitted that he had the shotgun, the handgun, but denied knowledge as to how the tire tool got there. He denied any recollection of shooting his wife or of phoning her parents after the shooting. As to several pointed questions on cross-examination, he had no response. The deceased was shot inside the apartment at a distance of three or four feet, the end of the shotgun being a foot or two from the man. On cross-examination, he said he then dropped the shotgun and followed his wife without it. He said that the man shot at him twice after the shootings and as he (appellant) was leaving. The shotgun was a single shot and had to be reloaded before firing again.

At the end of the hearing, the court orally found that the recollection was incomplete and that some of the matters recalled might stand in the way of granting a new trial.

By entry, the trial court overruled the motion based upon no recall of shooting his wife, trouble remembering the incident with the deceased, and because the recalled facts were contrary to the physical facts in the case. The court found appellant's recollection minimal.

There is no medical evidence other than such as was offered by Shea and no other evidence of any kind as to appellant's condition prior to or during trial.

We agree with the decision of the trial court that the recall of the appellant was both incomplete and substantially contradictory of the evidence produced at trial. The decision overruling the motion for new trial is not manifestly against the weight of the testimony. There was no error or abuse of discretion in the denial of the motion.

The first assignment of error is denied.

As indicated at the outset, there are three assignments of error presented by the appellant *pro se*. These, we are told, are of constitutional dimension, and are submitted because appellant's counsel refused to include them as assignments of error.

Appellant is correct when he refers to his assignments 4, 5 and 6 as constitutional questions. The sixth assignment describes a collateral question of competency of his counsel in ten factual respects.

Assignments 4, 5 and 6 are denied for the reason that the facts and legal issues were not raised at trial or brought in any manner to the attention of the trial court.

The record fails to disclose that the issues presented were ever raised or decided. An appellate court has no original jurisdiction to consider possible errors not called to the trial court's attention. *State* v. *Williams* (1977), 51 Ohio St. 2d 112 [5 O.O.3d 98]; *State* v. *Lancaster* (1971), 25 Ohio St. 2d 83 [54 O.O.2d 222]; *State* v. *Glaros* (1960), 170 Ohio St. 471. This rule applies to constitutional questions. *State* v. *Phillips* (1971), 27 Ohio St. 2d 294 [56 O.O.2d 174]; *State, ex rel. Specht,* v. *Bd. of Edn.* (1981), ·66 Ohio St. 2d 178 [20 O.O.3d 191]; *State* v. *Lynn* (1966), 5 Ohio St. 2d 106 [34 O.O. 226].

The judgments of the trial court in case Nos. 8367 and 8497 will be affirmed.

*Judgments affirmed.*

BROGAN, P.J., and KERNS, J., concur.

McBRIDE, J., retired, of the Second Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.