**Jeffrey YORK, Petitioner–Appellee, Cross–Appellant,**

v.

**Arthur TATE, Respondent–Appellant, Cross–Appellee.**

Nos. 87–3834, 87–3835.

United States Court of Appeals, Sixth Circuit.

Argued June 14, 1988.

Decided Sept. 28, 1988.

As Amended on Denial of Rehearing Nov. 10, 1988.

Thomas J. O'Connell, Asst. Atty. Gen., Columbus, Ohio, Cordelia Glenn (argued), for respondent-appellant, cross-appellee.

Paul Mancino, Jr. (argued), Cleveland, Ohio, for petitioner-appellee, cross-appellant.

Before MILBURN, GUY and NORRIS, Circuit Judges.

PER CURIAM.

In this appeal from the district court's order granting habeas relief under 28 U.S. C. § 2254, we are called upon to consider the proper application of the constitutional standard used for reviewing the sufficiency of the evidence presented in a state court criminal prosecution resulting in a conviction. In *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the Supreme Court instructed federal courts sitting in habeas to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319, 99 S.Ct. at 2789 (emphasis in original). In the instant case, the district court ruled that the *Jackson* standard must be applied in conjunction with the Ohio common law rule which provides that where "circumstantial evidence alone is relied upon to prove an element essential to a finding of guilt, it must be consistent only with the theory of guilt and irreconcilable with any reasonable theory of innocence." *State v. Kulig,* 37 Ohio St.2d 157, 309 N.E.2d 897, 899 (1974). Applying the *Kulig* rule in the instant case, the district court decided upon reconsideration to grant the petition for a writ of habeas corpus since, according to the district court, the petitioner's theory of innocence was plausible and was not necessarily precluded by the circumstantial evidence.

Because we find that the constitutional standard of review established in *Jackson v. Virginia* is irreconcilable with the Ohio common law rules set forth in *Kulig,* we find that the district court erred in applying the *Kulig* rule in this habeas case. Under the established standard of review for determining the sufficiency of evidence, we find that there was ample evidence presented at petitioner's trial from which a reasonable trier of fact could have found beyond a reasonable doubt that petitioner was guilty of committing the crime with which he was charged. We further find that the constitutional claims raised by the petitioner in his cross-appeal are without merit.

I.

Petitioner was convicted by an Ohio jury on one count of receiving stolen property in violation of Ohio Revised Code section 2913.51 and was sentenced to a term of three to five years in the state penitentiary. Petitioner's conviction was affirmed by the Ohio Court of Appeals and the Ohio Supreme Court refused to hear his appeal. After exhausting his state remedies, petitioner filed an application for a writ of habeas with the United States District Court for the Northern District of Ohio. The case was referred to a magistrate who recommended that the petition be denied. In its first opinion, issued April 7, 1987, the district court adopted the magistrate's recommendation and denied the petition. The court adopted the magistrate's report *in toto* with respect to eight of the nine constitutional claims alleged by the petitioner. The court, however, deemed it necessary to write a separate explanation regarding the sufficiency of evidence question. On April 17, 1987, petitioner filed a motion for new trial or to alter or amend the judgment. Respondent filed an opposing memorandum. On July 22, 1987, the district court issued another order granting the petitioner's motion to amend and reversing itself on the sufficiency of the evidence issue. On August 5, 1987, respondent filed its own motion to alter or amend the judgment of July 22, 1987. This motion was denied by a marginal entry of the court dated August 13, 1987. Respondent filed its notice of appeal to this court on August 24,

1987. Petitioner filed a cross-appeal on the same date.

The following evidence was presented at petitioner's trial. Detective Roger Kimble testified that on the afternoon of March 2, 1984, he and his partner responded to a complaint about pickpockets who were operating in the area. When the detectives arrived at the scene, the man who had called in the complaint informed the officers that the suspects had left and indicated the direction in which they were heading. The man described the suspects as three black males wearing trench coats.

The officers followed the man's directions and soon came upon two black men in trench coats standing among a group of people at a bus stop. Detective Kimble testified that he observed the petitioner, whom he later identified as Jeffrey York, bump into a group of people and then back off without boarding the bus.

After York bumped into the crowd for a second time, Detective Kimble observed York and his companion retreat into an entrance of a department store where they exchanged some money between themselves. Detective Kimble approached the pair, identified himself as a police officer, and asked York for some identification. York responded that his name was Robert Gray but claimed that he did not have any identification. Detective Kimble then inquired about the driver's license which was protruding out of a glove which York held in his hand. York threw the glove down and tried to flee into the department store but was quickly apprehended by Detective Kimble. Detective Kimble also testified that he found a second glove, similar to the one York threw down, in York's coat pocket after he was arrested.

The glove which York threw down was recovered by the officers. It contained a driver's license belonging to a woman named Shui Yin Kwan along with her social security card and other personal papers. Shui Yin Kwan testified that she had been waiting for a bus on the day in question at the same stop where Detective Kimble had observed York bumping into people. Ms. Kwan stated that someone "punched her"

while she was waiting for the bus. After she boarded the bus, Ms. Kwan noticed that her purse had been opened and that her wallet was missing. Ms. Kwan identified all of the items retrieved from York as belonging to her.

The sole witness for the defense was York's girlfriend, Wanda Martin. She testified that she was with York when he was arrested by Detective Kimble. According to Martin, she and York had been shopping in the department store when York found the glove on the floor. She testified that York had asked several people if the glove had belonged to them. She also testified that Detective Kimble did not identify himself as a police officer when he demanded identification from York. Martin further stated that Kimble "snatched" the glove from York's hand and "shoved" him against a wall before handcuffing him and leading him away. The petitioner did not testify in his own defense. Based on this evidence, Jeffrey York was convicted of receiving stolen property.

## II.

Before we address the merits of the claims raised by each of the parties, there are two procedural issues raised by the petitioner in his cross-appeal which we must first consider.

■ Petitioner claims that the respondent's appeal from the district court's judgment granting the petition for a writ of habeas corpus is moot because the petitioner is no longer in custody. The petitioner was released on July 31, 1987, pursuant to the writ of habeas corpus issued by the district court on July 27, 1987.

In *Carafas v. La Vallee*, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968), the Supreme Court unanimously held that a habeas corpus action is not mooted by the petitioner's unconditional release from custody so long as the prisoner was in custody at the time of the filing of the habeas corpus petition. In so ruling, the Court concluded "that under the statutory scheme, once the federal jurisdiction has attached in the District Court, it is not defeated by the release

of the petitioner prior to completion of the proceedings on such application." *Id.* at 238, 88 S.Ct. at 1560.

In *Carafas*, the Court emphasized the adverse collateral consequences resulting from a criminal conviction which persist even after the prisoner has been released. *Id.* at 239, 88 S.Ct. at 1560. The Court concluded that the habeas statute did not preclude the petitioner from pursuing his suit to achieve complete vindication even after he was released.

Under the principles set forth in *Carafas*, it is clear that the claims brought by the petitioner himself in his cross-appeal are not moot. Likewise, we conclude that the claims brought by the respondent contesting the validity of petitioner's release also remain viable. Just as the former prisoner has a continued interest in clearing his name, so too the state maintains an interest in assuring that a state prisoner is not improperly released prior to the completion of his allotted sentence. Moreover, we note that the Supreme Court has relied on *Carafas* in rejecting claims of mootness in cases where the prisoner was released during the pendency of an appeal brought by the state penal institution superintendent. *See e.g., Evitts v. Lucey*, 469 U.S. 387, 391 n. 4, 105 S.Ct. 830, 833 n. 4, 83 L.Ed.2d 821 (1985); *Jones v. Helms*, 452 U.S. 412, 415 n. 6, 101 S.Ct. 2434, 2438 n. 6, 69 L.Ed.2d 118 (1981).

Accordingly, we conclude that the instant case is not moot.

In his second procedural argument, petitioner contends that the respondent's appeal was untimely. Specifically, petitioner argues that the respondent's appeal was not filed within thirty days of the district court's judgment as required by Rule 4(a) of the Federal Rules of Appellate Procedure.

On April 7, 1987, the district court issued an order denying the petition for a writ of habeas corpus. Petitioner filed a timely motion to alter or amend the judgment which the district court granted on July 22, 1987, thereby reversing its previous judgment and granting the writ. On August 5, 1987, *respondent* filed a motion pursuant to Rule 59(e) of the Federal Rules of Civil Procedure to alter or amend the judgment of July 22, 1987.[1] The district court overruled this motion on August 13, 1987. Respondent filed its notice of appeal on August 24, 1987, nine days after the judgment of August 13, 1987.

Based on the foregoing chronology, petitioner argues that the respondent was required to file an appeal within thirty days of the district court's ruling of July 22, 1987. Petitioner concludes that the respondent's notice of appeal was untimely since it was filed on August 24, 1987, more than thirty days after the July 22, 1987 ruling. Petitioner further argues that the respondent's subsequent Rule 59(e) motion was a nullity and did not affect the time for filing an appeal since the Federal Rules of Civil Procedure do not contemplate the filing of successive motions to alter or amend the district court's judgment.[2]

---

1. Petitioner also contends that this motion was not timely filed because it was filed fourteen calendar days after the district court's judgment. However, petitioner overlooks Rule 6(a) of the Federal Rules of Civil Procedure which provides that "when the period of time prescribed or allowed is less than eleven days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation." Applying this rule to the facts of the instant case reveals that respondent's motion to alter or amend the district court's judgment of July 22, 1987, was filed within the prescribed ten-day time period.

2. In support of his argument, petitioner relies on the following passage quoted from Moore's Federal Practice:

A motion to alter or amend a judgment under Rule 59(e) that is served not later than

10 days after entry of judgment destroys the finality of the judgment for purposes of appeal. If the motion is denied the finality of the judgment is reestablished; and the policy underlying finality precludes the court from entertaining a motion to reconsider that denial, where the reconsideration motion is served later than 10 days after entry of judgment.

Is the latter principle against reconsideration applicable if the court grants the motion and alters or amends the judgment? Assuming that the alteration or amendment does not transform the judgment into an interlocutory adjudication, we believe that the answer should be in the affirmative. True the altered or amended judgment is not the same final judgment that was originally entered. But a motion for reconsideration would normally call for a reconsideration of the same issues

In response, respondent cites to a recent case decided by the Court of Appeals for the Seventh Circuit in which the court stated:

> [T]he purpose of Rule 59 is to allow the district court to correct its own errors, sparing the parties and appellate courts the burden of unnecessary appellate proceedings. See *United States v. Dieter*, 429 U.S. 6, 97 S.Ct. 18, 50 L.Ed.2d 8 (1976). The purpose of the rule suggests that when a court *alters* its judgment, a person aggrieved by the alteration may ask for correction. A successive motion directed to the same judgment is ineffectual, but when there is a new judgment—an alteration independently sufficient to restart the time for appeal—there is also a new period in which to file a motion under Rule 59.

*Charles v. Daley*, 799 F.2d 343, 348 (7th Cir.1986) (emphasis in original).

■ We find the reasoning of the Court of Appeals for the Seventh Circuit persuasive. We recognize the need for finality, and it may have arguably been the better practice for respondent to have appealed directly from the district court's grant of petitioner's motion to alter judgment rather than filing another motion to reconsider—especially if the successive Rule 59(e) motion does not raise any new arguments. Nevertheless, where, as here, the court grants a Rule 59(e) motion and significantly alters its prior judgment, we find that the federal rules do not prohibit the opposing party from filing a Rule 59(e) motion in an attempt to persuade the district court to reinstate its original judgment. For the purposes of Rule 59(e), a judgment is significantly altered when the new judgment "is one that 'changes matters of substance, or resolves a genuine ambiguity, in a judgment previously rendered.'" *Charles*, 799 F.2d at 348 (*quoting FTC v. Minneapolis–Honeywell Co.*,

that led to the alteration or amendment; and the party moving for reconsideration had his day in court when resisting the motion to alter or amend. In the interest of finality, relief, if any from the altered or amended judgment should come by appeal, or by mo-

344 U.S. 206, 211, 73 S.Ct. 245, 249, 97 L.Ed. 245 (1952)).

Accordingly, under Fed.R.App.P. 4(a)(4)(iii), the time for filing an appeal began to run from August 13, 1987, the date of the district court's denial of respondent's Rule 59(e) motion. Therefore, the respondent's notice of appeal was timely, and this court has jurisdiction to consider the merits of this case.

### III.

In reviewing a state court criminal conviction for sufficiency of evidence, a federal court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at 319, 99 S.Ct. at 2789 (emphasis in original). Under Ohio common law, however, "where circumstantial evidence alone is relied upon to prove an element essential to a finding of guilt, it must be consistent only with the theory of guilt and irreconcilable with any reasonable theory of innocence." *State v. Kulig*, 37 Ohio St.2d 157, 309 N.E.2d 897, 899 (1974).

In the instant case, the district court concluded that the Ohio common law rule governing the use of circumstantial evidence must be taken into consideration when reviewing an Ohio conviction for sufficiency of evidence under the *Jackson* standard. Accordingly, the district court found that the "circumstantial evidence" presented in the petitioner's state court prosecution was "not sufficient to permit a rational factfinder to return a verdict of guilty." In reviewing the evidence presented at trial, the district court stated:

> Even though York attempted to flee, it does not follow that he knew the items in his possession were stolen. It is not implausible that York found the items, thought them to be mislaid or lost, and

tion under Rule 60(b), which does not affect the finality of a judgment or suspend its operation.

6A *Moore's Federal Practice* § 59.13[4] (2d ed. 1987).

'fled from the officer in a moment of confused panic or fear. Because the argument that York stole Kwan's possessions, or participated in their theft, is not the only plausible explanation which can be drawn from the evidence, all reasonable theories of innocence are not precluded.

The district court's decision regarding the applicability of the *Kulig* rule was based on a quotation taken from an opinion of this court in *Scott v. Perini*, 662 F.2d 428 (6th Cir.1981), *cert. denied*, 456 U.S. 909, 102 S.Ct. 1758, 72 L.Ed.2d 167 (1982), wherein we stated: "The *Jackson* standard is to be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.' This also includes reference to state evidentiary law." *Scott*, 662 F.2d at 432 (citations omitted). At first glance, the isolated quotation taken from the *Scott* decision appears to support the district court's conclusion that *Kulig* should be applied by federal courts when reviewing Ohio criminal convictions for insufficiency of the evidence. Upon closer examination, however, it is clear that the *Scott* court itself did not apply the *Kulig* rule even though the case arose out of Ohio and that the district court's reliance on this case is misplaced.

In *Scott*, this court reversed a district court ruling granting a writ of habeas corpus to a petitioner who was convicted of first degree murder by an Ohio jury. A brief summary of the factual background of the *Scott* case is necessary for purposes of comparison with the instant case. In *Scott*, the petitioner and a companion were arrested after they were found driving a car which belonged to a man who had been murdered the night before. The victim had been shot twice, once by a .32 caliber weapon and once by a shot gun. A sawed-off shot gun was found under the front seat of the car and there were blood stains on the seats. The blood matched the type of the victim, type A, which is present in 20% of the general population.

Upon his arrest, Scott told the police that he and his friend had rented the car for a night from the victim for $15.00. Later, Scott claimed that his friend had picked him up after renting the car. At trial, Scott testified to a slightly different sequence of events, but at all times he denied any knowledge of or responsibility for the murder.

Based on this evidence, Scott was convicted of murder in the first degree.[3] On appeal, his conviction was reduced to the lesser included offense of murder in the second degree. After exhausting his state court appeals, Scott petitioned the federal district court for a writ of habeas corpus. The district court granted the writ, finding insufficient evidence to support his conviction. On appeal, this court reversed the ruling and held that there was enough evidence presented to convince a reasonable juror that Scott had participated in the murder. 662 F.2d at 435.

The portion of the *Scott* opinion quoted by the district court in the instant case was taken from the following paragraph in which the *Scott* court described the general standards applicable to habeas review for sufficiency of evidence:

The constitutional standard for reviewing the sufficiency of the evidence was established in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Justice Stewart held that the "relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. 443 U.S. at 319, 99 S.Ct. at 2789. The standard is *not* whether the evidence is sufficient to convince the habeas court of the petitioner's guilt beyond a reasonable doubt. Nor does that standard require the prosecution to rule out every hypothesis except

---

3. Scott's companion, Henry Speigner, was convicted of second degree murder; however, this court upheld a federal district court ruling granting Speigner a writ of habeas corpus based on a lack of sufficient evidence to support his conviction. *See Speigner v. Jago*, 603 F.2d 1208 (6th Cir.1979), *cert. denied*, 444 U.S. 1076, 100 S.Ct. 1023, 62 L.Ed.2d 758 (1980).

that of guilt beyond a reasonable doubt.[3] *Id.* [443 U.S.] at 326, 99 S.Ct. at 2793. The *Jackson* standard is to be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n. 16, 99 S.Ct. at 2792 n. 16. This also includes reference to state evidentiary law. *Moore v. Duckworth,* 443 U.S. 713, 99 S.Ct. 3088, 61 L.Ed.2d 865 (1979). Thus we have held in *Goldman v. Anderson,* 625 F.2d 135 (6th Cir.1980), that it is proper for the federal habeas court to take cognizance of state evidentiary law in determining whether an element of the particular criminal offense has been proved.

  [3] Ohio apparently continues to follow the rule that where "circumstantial evidence alone is relied upon to prove an element essential to a finding of guilt, it must be consistent only with the theory of guilt and irreconcilable with any reasonable theory of innocence." *State v. Kulig,* 37 Ohio St.2d 157, 309 N.E.2d 897, 899 (1974).

*Scott v. Perini,* 662 F.2d at 431-32. We have included footnote three which was appended to the foregoing quotation in order to illustrate two points.

First, we note that when read in context, the footnote appears in juxtaposition to the sentence in the accompanying text which states, "Nor does that standard require the prosecution to rule out every hypothesis except that of guilt beyond a reasonable doubt.[3]" 662 F.2d at 431-32. Thus, the general rule set forth in the text of the *Scott* opinion is diametrically opposed to the statement from *Kulig* quoted in the footnote. Therefore, it appears that the *Scott* court was merely noting the existence of a different standard applied by Ohio courts rather than specifically adopting that standard for use by federal courts in habeas proceedings.

Second, when the opinion is read in its entirety, it is obvious to the reader that the *Scott* court did *not* apply the *Kulig* rule in determining the sufficiency of the evidence. The evidence against Scott was entirely circumstantial. There was no confession, nor were there any witnesses to the murder. Nevertheless, the *Scott* court stated, "We note that the mode of analysis for assessing the sufficiency of the evidence under *Jackson v. Virginia, supra,* is not significantly altered because this case ... rests totally upon circumstantial evidence." 662 F.2d at 433. Appended to this sentence is a footnote in which the court discusses the reliability of direct versus circumstantial evidence:

  [7] Much has been written concerning the relative weight of circumstantial and direct evidence. Generalized opinion ranges from that which tends to place lesser credence in circumstantial evidence to that which assigns it greater reliability on the premise that the witness giving direct testimony may lie, but circumstances do not. *See* 1 Wigmore on Evidence § 26 (3rd ed. 1940). In a civil case, *Michalic v. Cleveland Tankers, Inc.,* 364 U.S. 325, 330, 81 S.Ct. 6, 10, 5 L.Ed.2d 20 (1960), the Supreme Court stated: "But direct evidence of a fact is not required. Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." The modern view is that the law generally makes no distinction between direct or circumstantial evidence nor requires particular instruction to the jury, allowing jurors to give evidence the weight which they believe it is entitled.

*Scott,* 662 F.2d at 433-34 n. 7.

Not only did the *Scott* court uphold the constitutionality of the petitioner's conviction based purely on circumstantial evidence, but also this court expressly acknowledged that the evidence could have been interpreted in a manner which would allow a reasonable jury to conclude that Scott was innocent and that his companion was solely responsible for the murder. 662 F.2d at 434.

Nevertheless, the *Scott* court held that there was sufficient evidence to sustain Scott's conviction of second degree murder because the same circumstantial evidence would allow a jury to conclude, "with far more justification and reason," that Scott had killed the victim or at least had aided and abetted in the murder. *Id.* Therefore, the analysis employed by the *Scott* court

for weighing the sufficiency of the evidence was completely contrary to the Ohio rule as set forth in *Kulig* which requires that circumstantial evidence be "irreconcilable with any reasonable theory of innocence."

The inclusion of footnote three in the *Scott* opinion signifies that the court was cognizant of the rule in *Kulig,* and this court's subsequent analysis demonstrated a conscious decision not to apply that mode of analysis in deciding whether or not the petitioner was entitled to habeas relief.

Based on our interpretation of this court's decision in *Scott v. Perini,* we find that the district court below erred in relying on that opinion as a basis for applying the *Kulig* rule to test the sufficiency of the evidence in support of petitioner's Ohio criminal conviction.

In addition to our reading of the *Scott* decision, there is another more fundamental reason which compels us to conclude that the district court erred in applying the *Kulig* standard in the instant habeas proceeding. In *Jackson v. Virginia,* the Supreme Court was careful to emphasize that the federal court sitting in habeas should not attempt to substitute its own opinion for that of the jury which convicted the petitioner. Thus, following its enunciation of the test for determining the sufficiency of evidence, the Court stated:

> This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon "jury" discretion only to the extent necessary to guarantee the fundamental protection of due process of law.

*Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789 (emphasis in original). A footnote appended to this passage included an additional admonition:

> [13] The question whether the evidence is constitutionally sufficient is of course wholly unrelated to the question of how rationally the verdict was actually reached. Just as the standard announced today does not permit a court to make its own subjective determination of guilt or innocence, it does not require scrutiny of the reasoning process actually used by the factfinder—if known. See generally 3 F. Wharton, Criminal Procedure § 520 (12th ed. 1975 and Supp.1978).

443 U.S. at 319–20 n. 13, 99 S.Ct. at 2789 n. 13.

By applying the *Kulig* rule to test the sufficiency of the evidence in the instant habeas proceeding, the district court exceeded the scope of its proper role by impermissibly dismissing the reasonable conclusions of the jury. The evidence against the petitioner in this case was more than sufficient to enable a reasonable juror to conclude that the petitioner was guilty of receiving stolen goods. The petitioner matched the description given by a person who reported that he had observed three men engaging in pickpocketing. A detective testified that he saw the petitioner and another man loitering at a bus stop, jostling people and behaving in a manner consistent with a pickpocket operation. The detective also observed the petitioner exchange money with his companion. Most importantly, the petitioner was found in possession of several pieces of identification which belonged to a woman who had been standing in line waiting for the bus. The woman testified that she had been "punched" while standing in the crowd and that, when she boarded the bus, she discovered that her purse had been opened and her wallet was missing. In addition, the detective testified that the petitioner had initially given a false name and had attempted to flee upon further questioning. The petitioner's sole witness, his girlfriend, claimed that he had found the pieces of identification in a glove laying on the floor. Her testimony also differed in several respects from that given by the detective regarding the circumstances of the arrest.

The jury was free to credit the testimony of the detective and to discredit the story told by the petitioner's girlfriend. Indeed, under the *Jackson* standard, the federal court is required to view the evidence "in the light most favorable to the prosecution" and then determine whether *any* rational trier of fact could have found the defendant guilty beyond a reasonable doubt. By applying the *Kulig* rule, the district court turned the *Jackson* standard on its head. Rather than asking whether *any* reasonable juror could have found petitioner guilty, the district court considered whether any reasonable juror could have found the petitioner *not* guilty. Since the district court thought petitioner's story was not entirely "implausible" and was not "irreconcilable" with the circumstantial evidence presented, the court concluded that a rational trier of fact could have found that the identification was not stolen or that the petitioner did not know it had been stolen when he allegedly found it on the floor. Such an analysis is totally at odds with the standard of review set forth by the Supreme Court in *Jackson.* We note that in *Jackson* the Supreme Court expressly rejected "a theory that the prosecution was under an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt...." 443 U.S. at 326, 99 S.Ct. at 2789.[4] Moreover, the approach adopted by the district court conflicts with that portion of the *Jackson* standard which requires the federal court to "view the evidence in the light most favorable to the prosecution." Instead, the district court considered the evidence in the light most favorable to the defendant-petitioner.

■ We hold that the Ohio common law rule set forth in *Kulig* is not required by the federal Constitution and should not be applied by a federal court in deciding whether the petitioner is entitled to habeas relief. Applying the established *Jackson* standard for sufficiency of evidence, we find the evidence in this case was sufficient to enable a rational trier of fact to find that the petitioner was guilty of the crime charged beyond a reasonable doubt.[5]

Accordingly, the district court's judgment of July 22, 1987, granting the petition for habeas corpus from which the respondent appeals in case number 87–3834 is REVERSED.

## IV.

The claims of error raised by the petitioner in his cross-appeal are without merit and, therefore, do not require extensive discussion. Most of the petitioner's claims involve challenges to evidentiary rulings by the trial judge which are not cognizable in habeas corpus proceedings. *Matlock v. Rose,* 731 F.2d 1236, 1242 (6th Cir.1984), *cert. denied,* 470 U.S. 1050, 105 S.Ct. 1747, 84 L.Ed.2d 812 (1985). The remainder of the petitioner's claims either involve issues of state law or do not amount to violations of the federal Constitution.

Therefore, the portion of the district court's ruling of April 7, 1987, adopting the magistrate's report and recommendation from which the petitioner filed his cross-appeal in case number 87–3835 is AFFIRMED.

For the foregoing reasons, the judgment of the district court is REVERSED IN PART, AFFIRMED IN PART, and REMANDED for further proceedings consistent with this opinion.

---

4. In an unpublished per curiam opinion, this court has specifically rejected the application of the *Kulig* rule in a habeas proceeding arising out of Ohio, since "this state evidentiary standard is not a constitutional requirement." *Sales v. Marshall,* 725 F.2d 684 (6th Cir.1983).

5. We note also that the Ohio rule applies only when a prosecution is based on circumstantial evidence *alone.* Here, although no one saw York steal the personal property of Ms. Kwan, he was not charged with the theft but, rather, with receiving stolen property. There was *di-rect* evidence of this offense. For example, he was found with the property in his possession shortly after the theft, he was observed in the area of the theft at or about the time the theft occurred, and was engaging in conduct incidental to the type of theft that occurred here. This goes beyond merely being found in the locale of a crime, which is only circumstantial evidence. Also, his lying to the officer and flight when found in actual possession of the stolen goods is also arguably direct evidence under these circumstances.