898 F.2d 153
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
George Monroe HEDERSON, Petitioner-Appellant,
v.
Arthur TATE, Jr., Supt., Respondent-Appellee.
 No. 89-3425.
 United States Court of Appeals, Sixth Circuit.
 March 20, 1990.
 
 1
 Before RALPH B. GUY, Jr. and BOGGS, Circuit Judges, and PAUL V. GADOLA, District Judge.*
 
 ORDER
 
 2
 George Monroe Hederson is an Ohio prisoner who appeals the district court's dismissal of a habeas corpus petition that he had filed under 28 U.S.C. Sec. 2254 (West 1989). His case has been referred to a panel of the court pursuant to Rule 9(a), Rules of the Sixth Circuit. Upon examination of the record and the briefs, the panel unanimously agrees that oral argument is not needed in this case. Fed.R.App.P. 34(a).
 
 
 3
 Hederson was sentenced to life imprisonment after being convicted by a jury of one count of aggravated murder, a violation of Ohio Revised Code Sec. 2903.01(A) (Anderson 1987). His conviction has been extensively reviewed by the Ohio Court of Appeals and by the Ohio Supreme Court both on direct appeal and pursuant to Hederson's motion for post conviction relief. His first habeas petition in federal court was denied because it contained both exhausted and unexhausted claims.
 
 
 4
 On August 23, 1988, Hederson filed a second federal habeas petition. His only claim was that the state had not offered sufficient evidence to show that he had acted with "prior calculation and design," a necessary element of aggravated murder in Ohio. The case was referred to a magistrate who recommended that both Hederson's motion for summary judgment and his petition for habeas relief be denied. On April 11, 1989, the district court entered an order that adopted the magistrate's recommendation and dismissed Hederson's petition. It is from this order that Hederson now appeals.
 
 
 5
 The Ohio Court of Appeals made the following findings of fact in affirming Hederson's conviction:
 
 
 6
 On March 14, 1983, George Hederson was indicted for the aggravated murder of his wife, Sherry. The evidence reveals that on March 9, 1983 Sherry, who had a tendency to leave home for long periods of time, was again absent. Early in the day, Hederson assembled the family members and began searching for Sherry. The search led Hederson to the home of a neighbor who reportedly knew the whereabouts of Sherry. Upon arriving at the neighbor's house, Hederson declared that he wanted some answers and that he was going to "blow somebody away." Shortly thereafter, Sherry appeared at the house and she and Hederson engaged in an increasingly heated discussion. Sherry then stated that she was not going to listen to Hederson any longer. She thereupon got up to leave. At that point Hederson blocked the exit and produced a gun. Ignoring Sherry's pleas, Hederson shot her several times. She died in the hospital.
 
 
 7
 Hederson fled the home and drove to Massachusetts. His belongings had previously been packed in the car. While in Massachusetts, Hederson was arrested, waived extradition, and was returned to Ohio. A jury found Hederson guilty of aggravated murder, and the court sentenced him to life in prison.
 
 
 8
 These findings are presumed to be correct because Hederson has not shown by convincing evidence that they are erroneous. See Brown v. Davis, 752 F.2d 1142, 1147 (6th Cir.1985).
 
 
 9
 In addition, the following findings from the magistrate's report were incorporated into the district court's opinion:
 
 
 10
 In the case sub judice, Petitioner also made a very general statement to the effect that "he was going to blow somebody away tonight".... Additionally, only 45 minutes elapsed between when Petitioner made the statement and when the incident actually occurred. Moreover, Petitioner had been searching for the victim all day with the rest of his family. Furthermore, there is evidence in the record to support the fact that Petitioner was carrying a gun while he was searching for Sherry. Enough time elapsed between when petitioner pulled the gun from the back of his pants and when he fired the first shot into Sherry, to allow one of the witnesses to run from the living room, through a hallway, out the back door, and around to the front of the house. This witness testified that he had reached the front corner of the house before he heard any shots.
 
 
 11
 * * *
 
 
 12
 * * *
 
 
 13
 Here, Petitioner waited for his wife for about 30 minutes before she arrived and he talked with her about coming home for at least ten additional minutes. Additionally, Petitioner fired four shots into the victim, each of which were fired while the gun was placed against the victim's body.... Furthermore, the coroner testified that the shot to the victim's head was enough to cause death, and the sequence of three shots into the victim's chest was enough to cause death.
 
 
 14
 A review of the record shows that these findings must also be accepted as they are not clearly erroneous. See McCall v. Dutton, 863 F.2d 454, 459 (6th Cir.1988), cert. denied, 109 S.Ct. 1744 (1989).
 
 
 15
 Hederson argues that this evidence is insufficient to establish that he acted with prior calculation and design as that element of aggravated murder has been interpreted by the Ohio courts. In reviewing this claim we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). This standard is applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." Id. at 324 n. 16; York v. Tate, 858 F.2d 322, 327-28 (6th Cir.1988), cert. denied, 109 S.Ct. 1960 (1989).
 
 
 16
 The Ohio courts have distinguished prior calculation and design from the common law element of premeditation by holding that it requires more than instantaneous deliberation. State v. Cotton, 56 Ohio St.2d 8, 11, 381 N.E.2d 190, 193 (1978). "The apparent intention of the General Assembly in employing this phrase was to require more than the few moments of deliberation permitted in common law interpretations of the former murder statute, and to require a scheme designed to implement the calculated decision to kill." Id.
 
 
 17
 Some of the important factors to be examined and considered in deciding whether a homicide was committed with prior calculation and design include: whether the accused knew the victim prior to the crime, as opposed to a random meeting, and if the victim was known to him whether the relationship had been strained; whether thought and preparation were given by the accused to the weapon he used to kill and/or the site on which the homicide was to be committed as compared to no such thought or preparation; and whether the act was drawn out over a period of time as against an almost instantaneous eruption of events. These factors must be considered and weighed together and viewed under the totality of all circumstances of the homicide.
 
 
 18
 State v. Jenkins, 48 Ohio App.2d 99, 102-03, 355 N.E.2d 825, 828 (1976).
 
 
 19
 When these factors are considered it becomes clear that a reasonable juror could have found that Hederson acted with prior calculation and design when he killed his wife. It cannot be disputed that Hederson knew the victim and that their relationship was strained. Cf. State v. Toth, 52 Ohio St.2d 206, 213, 371 N.E.2d 831, 835 (1977), disapproved in part on other grounds, State v. Muscatello, 55 Ohio St.2d 201, 150 n. 3, 378 N.E.2d 738, 740 n. 3 (1977); State v. Mathis, 16 Ohio App.3d 13, 15, 473 N.E.2d 1220, 1222 (1984). There was also sufficient evidence to support a finding that Hederson had prepared for the crime. He had armed himself with the murder weapon. Cf. State v. Davis, 38 Ohio St.3d 361, 366, 528 N.E.2d 925, 930 (1988), cert. denied, 109 S.Ct. 849 (1989); Toth, 52 Ohio St.2d at 207, 371 N.E.2d at 832. He had also conducted an extensive search for the victim and had threatened to "blow somebody away." Cf. Toth, 52 Ohio St.2d at 213, 371 N.E.2d at 835; Mathis, 16 Ohio App.3d at 14, 473 N.E.2d at 1221. Moreover, Hederson had packed his car before the murder and had fled to Massachusetts immediately after the murder was committed. Cf. Toth, 52 Ohio St.2d at 211, 371 N.E.2d at 834-35; Mathis, 16 Ohio App.3d at 14, 473 N.E.2d at 1221.
 
 
 20
 This evidence indicates that Hederson's case involved more than a spontaneous eruption of events. In addition, there was evidence that Hederson was the aggressor and that he prevented his relatively helpless victim's attempt to escape. Cf. State v. Robbins, 58 Ohio St.2d 74, 78-79, 388 N.E.2d 755, 757-58 (1979); Mathis, 16 Ohio App.3d at 14, 473 N.E.2d at 1221. There were at least a few moments between the time that Hederson pulled a gun from the waistband of his pants and the time that he shot the victim. Cf. Cotton, 56 Ohio St.2d at 9-11, 381 N.E.2d at 192-93; Toth, 52 Ohio St.2d at 213-14, 371 N.E.2d at 835-36. Finally, there was evidence that Hederson shot the victim repeatedly at very close range despite her pleas for mercy. Cf. Davis, 38 Ohio St.3d at 366, 528 N.E.2d at 930; Cotton, 56 Ohio St.2d at 8-11, 381 N.E.2d at 192-93.
 
 
 21
 The cited cases arguably contain some facts that are more egregious than the facts in the instant case. However, in each of these cases, as in the case at bar, there was sufficient evidence to support an aggravated murder conviction under the totality of the circumstances test that was announced in Jenkins. Accordingly, the district court's order dismissing Hederson's petition for a writ of habeas corpus is hereby affirmed. Rule 9(b)(5), Rules of the Sixth Circuit.
 
 
 
 *
 The Honorable Paul V. Gadola, U.S. District Judge for the Eastern District of Michigan, sitting by designation