NOT RECOMMENDED FOR PUBLICATION
File Name: 07a0031n.06
Filed: January 9, 2007

No. 05-6483

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| CECIL ANDREW HARTMAN, | ) | EASTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | OPINION |

**Before: SILER, MOORE, and GILMAN, Circuit Judges.**

**RONALD LEE GILMAN, Circuit Judge.** A federal jury convicted Cecil Andrew Hartman of manufacturing marijuana, possessing marijuana with the intent to distribute, and possessing cocaine hydrochloride with the intent to distribute. On appeal, Hartman challenges the district court's denial of (1) his pretrial motion to suppress the evidence seized from and around his house, and (2) his motion for judgment of acquittal or for a new trial based on the alleged insufficiency of the evidence, even if lawfully seized. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

**I. BACKGROUND**

**A.      Factual background**

The key facts in this appeal concern the events of October 7, 2002, the day that the Hamilton County Sheriff's Office received an anonymous tip indicating that marijuana plants, visible from the roadway, were growing at 5205 McDonald Road in McDonald, Tennessee. Neither party disputes that Hamilton County magistrate Robert Meeks issued a valid search warrant at 7:10 p.m. that evening, authorizing the police to search the residence, outbuildings, motor vehicles, and any persons located at 5205 McDonald Road. The parties also do not dispute that the search of the house and its immediate surroundings uncovered substantial quantities of drugs and drug paraphernalia. What is in dispute is the timing of the search vis-a-vis the issuance of the warrant.

### 1. *The government's evidence*

At the hearing held on Hartman's pretrial motion to suppress the evidence against him, the government first called Detective Marty Dunn of the Hamilton County Sheriff's Office. Dunn testified that at approximately 10:30 a.m. on October 7, 2002, he received a call from Crime Stoppers notifying him that marijuana plants were growing at 5205 McDonald Road. Later that afternoon, Dunn and several other law enforcement officers drove out to the residence to investigate. From the road, Dunn observed a four-foot tall marijuana plant growing in plain view near an outbuilding (described as a chicken coop) on the property. The officers took several photographs of the plant. Dunn also noticed electrical cords running from the outbuilding to the house.

The officers proceeded to drive up to the house and knock on the door to see if anyone was there. As the officers were walking toward the house, they noticed on the ground the stem of a marijuana plant that still had a leaf attached. They photographed this plant as well. On the porch, Dunn observed a surveillance camera with a microphone that was attached to the house.

Dunn estimated that sometime after 5:00 p.m., he left the premises to drive downtown to apply for a search warrant. After a local magistrate judge issued the warrant at 7:10 p.m., Dunn drove back to the McDonald Road house where his fellow officers were waiting outside. Dunn knocked and announced his presence at the front door of the house at approximately 8:00 p.m. Receiving no response, he and the officers forced the front door open and entered.

The subsequent search of the house lasted approximately three to four hours and yielded a wealth of drugs and drug paraphernalia. Among the items that the officers seized were multiple clear bags containing marijuana, approximately three pounds of marijuana that had been laid out to dry, a small clear bag containing an off-white powdery substance, two containers holding clear plastic bags of cocaine hydrochloride, large amounts of green plant stems and marijuana seeds, a clear bag containing multiple unknown tablets unaccompanied by prescriptions, two marijuana plants located inside the residence and six marijuana plants located outside the residence, a large assortment of drug paraphernalia, three sets of digital scales, one triple-beam scale, numerous plastic bags, two mortar-and-pestle sets, several publications related to marijuana, four small surveillance cameras and an accompanying receiver, a frequency counter used to detect listening devices, four 12-gauge shotgun shells, and one pair of ear protectors for use during shooting. The officers also discovered, but were unable to remove at the time, several parts from a stolen car. Finally, the officers seized multiple items bearing Hartman's name. These included a prescription-drug bottle, mail addressed to Hartman, a Tennessee Department of Correction inmate ID card, a business card listing 5205 McDonald Road as Hartman's address, store receipts a month or more old, bank checks, and deposit slips.

Two days later, on October 9, 2002, Dunn and several other law enforcement officers returned to the McDonald Road residence in a flatbed truck to seize and haul away the parts of the stolen car that their search had uncovered. The officers had rented the truck from a local wrecker service, and the government introduced at the suppression hearing a copy of the rental invoice. October 9, 2002, was the date printed on the invoice. At oral argument, Hartman's counsel conceded that he had no proof, nor had any reason to believe, that the invoice had been "doctored" in any way.

### 2. *Hartman's contrary evidence*

Hartman's witnesses recounted a different chain of events. Shirley Young, Hartman's neighbor, testified that sometime between 1:00 and 1:30 p.m. on October 7, 2002, she saw a Jeep Cherokee speed past her house. She yelled at the driver and told him to slow down. The driver stopped, backed up to speak with her, showed her his police badge, and told her that he was going to get a search warrant. This much was consistent with the testimony of Detective Dunn, who recalled having had a brief conversation with Young on October 7.

According to Young, a flatbed truck also arrived at Hartman's house at approximately 3:00 p.m. that same day. Young then called Hartman's mother, Veta Watkins, and informed her that the police were at her son's home. At approximately 4:30 p.m., while Young was again on the phone, she saw the flatbed truck coming down the driveway from Hartman's house with "a bunch of junk" on it. She further testified that by 6:30 p.m., all of the police officers had left the area.

Later that night, at approximately 7:00 p.m., Young and Watkins claim that they walked up to Hartman's house where they saw that the door had been forced open. Young testified that the house had been ransacked. She stated that she was inside for about 30 or 40 minutes before

returning home. She did not see anyone return to Hartman's home or the surrounding area that evening.

Watkins also testified on her son's behalf. She said that when she entered the house with Young on October 7, she observed numerous papers on the pool table including a list of everything that had been taken from the residence. But she also recalled that attached to this inventory was a copy of a search warrant.

**B.      Procedural background**

A federal grand jury indicted Hartman on four counts: (1) possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g); (2) manufacturing marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D); (3) possessing marijuana with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D); and (4) possessing cocaine hydrochloride with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(c).

Hartman subsequently moved to suppress the evidence seized from his property. After reviewing the conflicting testimony presented at the suppression hearing, the district court concluded that "the testimony of Young and Watkins is unreliable and not credible." Specifically, the court determined that "Young and Watkins either are not telling the truth or they are confusing the events of October 7, 2002 (execution of search warrant) with the events of October 9, 2002 (police return to Hartman's residence with flatbed truck to haul away stolen automobile parts)." The court reasoned that because the government had proved that the flatbed truck was used on October 9, "common sense and logic dictate that Young and Watkins were together inside Hartman's house on

- 5 -

October 9, 2002." Accordingly, the court held that the evidence seized from and around the house should not be suppressed because it was obtained after a valid search warrant had been issued.

Hartman's case then proceeded to trial, where several of the police officers who were involved in the search of the house testified. Deputy Van Hinton from the Hamilton County Sheriff's Office described his participation in the search. When asked by Hartman's counsel whether he had arrived at the scene at or after 8:00 p.m., Van Hinton responded, "I don't think it was that late. It was late in the evening, but I don't think it was that late. . . . Roughly after six, somewhere in there I'm thinking." But Van Hinton also stated that he was at the residence only after the warrant had been procured.

Detective Manka also testified at trial. Regarding the events of October 7, 2002, he was assigned to "secure the area [around Hartman's house] to where nobody can come in and go out of the home" while Detective Dunn was applying for the search warrant. Manka testified that before Dunn returned with the warrant, Manka took photographs of several marijuana plants and looked in the chicken coop "to make sure there was nothing else or nobody in there." While in the chicken coop, Manka seized several items of drug paraphernalia, including multiple smoking pipes. Based on Manka's testimony, Hartman orally renewed his motion to suppress the evidence against him. It was again denied.

The jury ultimately convicted Hartman of all but the first count of the indictment (the firearm charge). He thereafter filed a motion for judgment of acquittal or, alternatively, for a new trial. The district court denied the motion and sentenced Hartman to 33 months in prison, to be followed by 3 years of supervised release. Hartman timely appealed, claiming that the district court erred in

denying the motion to suppress because the officers allegedly conducted their search prior to the issuance of the warrant. He further claims that the district court erred in denying his motion for judgment of acquittal or for a new trial because the evidence was insufficient to support his convictions.

## II. ANALYSIS

### A.     Motion to suppress

#### 1.     *Standard of review*

With regard to Hartman's motion to suppress, we will not set aside the district court's findings of fact unless we find them to be clearly erroneous. *United States v. Foster*, 376 F.3d 577, 583 (6th Cir. 2004). We view the evidence in the light most favorable to the government, finding clear error only "when, although there may be evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* As long as the district court's account of the evidence is plausible, however, we will not reverse simply because we would have weighed the evidence differently. *Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.*

#### 2.     *Discussion*

As an initial matter, Hartman's counsel conceded at oral argument that even if Officer Manka's search of the chicken coop had in fact occurred before the issuance of the warrant, and thus in violation of the Fourth Amendment, the district court's erroneous admission of the small amount

of evidence obtained from that search was harmless. *See United States v. Jenkins*, 124 F.3d 768, 774 (6th Cir. 1997) (holding that the admission of unconstitutionally seized evidence from Jenkins's backyard was harmless error where the police had lawfully seized approximately 862 marijuana plants and other drug-related paraphernalia). We accordingly need consider only whether the more extensive subsequent search of the house also violated Hartman's Fourth Amendment rights.

Hartman's basic contention is that the search of his home, and the subsequent seizure of the various drug-related items therein, occurred before Detective Dunn returned to the residence with the warrant. *See United States v. Taylor*, 248 F.3d 506, 513 (6th Cir. 2001) ("Once an officer has probable cause to believe contraband is present, he must obtain a search warrant before he can proceed to search the premises."). To support this argument, Hartman cites the testimony of Young and Watkins from the suppression hearing as well as the trial testimony of Deputy Van Hinton.

Regarding the testimony of Young and Watkins, the district court rejected their versions of the events of October 7, 2002, finding both witnesses to be "unreliable and not credible." Their assertions clearly contradicted those of the police officers. Based on Watkins's testimony that she had seen the search warrant while at Hartman's house at approximately 7:00 p.m. on October 7, as well as the government's proof that the officers had used the flatbed truck only on October 9, the district court reasonably believed the officers' version of the events. Because the district court simply chose between two conflicting views of the evidence, it could not have committed clear error in doing so. *See Anderson v. City of Bessemer*, 470 U.S. at 574.

Deputy Van Hinton's testimony adds little to Hartman's case. To be sure, Van Hinton did estimate that he had arrived at the house some time around 6:00 p.m. on October 7, or more than an

hour before the warrant was in fact issued. But his exact words were "[r]oughly after six, somewhere in there I'm thinking," and he also stated that he was at the residence only *after* the warrant had already been procured. This testimony hardly provides sufficient evidence to conclude that the district court's findings of fact were clearly erroneous.

**B.     Motion for judgment of acquittal or new trial**

Hartman argues in the alternative that even if the evidence obtained from the search of the house was properly admitted, it was insufficient to support his several convictions. Specifically, he argues that the evidence failed to establish his constructive possession of the premises and items in question. He therefore contends that the district court erred in denying his motion for judgment of acquittal or for a new trial.

*1.     Standard of review*

In arguing that the evidence was insufficient, Hartman bears "a very heavy burden." *See United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999). Evidence in a criminal case is deemed sufficient to support a conviction if we determine that, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Paige*, — F.3d —, —, 2006 WL 3589787, at *3 (6th Cir. Dec. 12, 2006) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original). We view the evidence in the light most favorable to the government by drawing all reasonable inferences from the testimony in its favor. *United States v. Abdullah*, 162 F.3d 897, 903 (6th Cir. 1998).

Hartman alternatively moved for a new trial pursuant to Rule 33 of the Federal Rules of Civil Procedure. We apply the abuse-of-discretion standard of review to motions for a new trial. *United States v. Pierce*, 62 F.3d 818, 823 (6th Cir. 1995). Unlike in a sufficiency claim, we may "consider the credibility of the witnesses and the weight of the evidence to insure that there is not a miscarriage of justice." *United States v. Solorio*, 337 F.3d 580, 589 n.6 (6th Cir. 2003).

### 2. *Discussion*

Hartman points out that the police never actually saw him on the premises. Indeed, the government did not present any witnesses who testified to ever having seen Hartman in possession of either marijuana or cocaine. Moreover, no individuals were identified as being involved in drug-related activities with Hartman. Hartman also emphasizes that there was no evidence that he had recently resided at the premise. His argument, however, is without merit.

To convict Hartman on Count Two, the jury had to find beyond a reasonable doubt that he knowingly manufactured marijuana. Regarding Counts Three and Four, the jury had to find beyond a reasonable doubt that Hartman knowingly possessed the marijuana and the cocaine, respectively, with the intent to distribute. The government was not required to introduce direct evidence that Hartman actually distributed marijuana and cocaine to another person; circumstantial evidence alone can be sufficient. *See United States v. Mackey*, 265 F.3d 457, 460 (6th Cir. 2001).

During their search, the police uncovered large quantities of both marijuana and cocaine hydrochloride, as well as other items associated with drug trafficking. The government also presented a significant amount of evidence demonstrating that Hartman lived at the residence. Multiple items in the house had Hartman's name on them, including an official ID card, a

prescription-drug bottle, several pieces of mail, bank checks and deposit slips, and miscellaneous store receipts.  Although none of the receipts were less than a month old, Hartman himself undermined whatever exculpatory value this obsolescence might have had by listing the very same address as his primary residence at the time of his arrest.

Nor was there any evidence, either discovered by the police or introduced by Hartman, that any person other than Hartman resided in or otherwise had control over the residence.  Viewing these facts in the light most favorable to the prosecution, a rational juror could have found that the evidence was more than sufficient to establish beyond a reasonable doubt Hartman's constructive possession of the items and premises in question.  *See Paige*, 2006 WL 3589787, at *3.  Accordingly, the district court did not err in denying Hartman's motion for judgment of acquittal or, in the alternative, for a new trial.

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.