NOT RECOMMENDED FOR PUBLICATION
File Name: 07a0077n.06
Filed: January 31, 2007

No. 04-1376

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

MICHAEL ALONZO THOMPSON,

    Petitioner-Appellant,

v.

BARBARA BOCK,

    Respondent-Appellee.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

_____/

BEFORE:    CLAY and ROGERS, Circuit Judges; and KATZ, District Judge.[*]

    **CLAY, Circuit Judge.** Petitioner Michael Thompson appeals the district court order denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Thompson was convicted of several drug charges, including possession of a firearm during the commission of a felony ("felony firearm"), in violation of Mich. Comp. Laws § 750.227(b) with the underlying felony possession of marijuana with intent to deliver, in violation of Mich. Comp. Laws § 333.7401(2)(c). Petitioner appeals on the grounds that there was insufficient evidence to sustain his felony firearm conviction, and that he was entitled to a directed verdict on that charge. For the reasons that follow,

_____

[*]The Honorable David A. Katz, United States District Judge for the Northern District of Ohio, sitting by designation.

we **AFFIRM** the order of the district court and **DENY** Petitioner's petition for a writ of habeas

corpus.

**BACKGROUND**

The Michigan Court of Appeals summarized the relevant trial testimony as follows:

There was evidence that on December 19, 1994, an informant working with the Flint Area Narcotics Group ("FANG") arranged to purchase three pounds of marijuana from defendant. The informant had been cooperating with FANG since it raided his home in November 1994. After the informant arranged to purchase the marijuana from defendant for $4200, he contacted Lieutenant Compeau of FANG, informing him of the arrangement. Compeau met with the informant, giving him $4200. The informant left the meeting place and drove to defendant's home. The informant gave defendant the money, and defendant told the informant that he would "take care of" the informant, but that he had to go to his safe house and would then be at the informant's house after a short time.

After the informant left defendant's house, a FANG surveillance team followed defendant to a condominium owned by Bethany Gayden.

The informant left defendant's house and met Compeau nearby. They drove to another location to talk. The informant told Compeau that he had to go to his house, where defendant would bring the marijuana.

A short time after the informant returned home, defendant drove up in his car and beeped his horn. The informant went out to the car, got in and took a grocery bag that was sitting on the passenger-side floor. He took the bag into his home. After defendant drove away, Compeau arrived at the informant's home. He went inside. The informant pointed out a grocery bag. Compeau opened the bag and saw that it contained marijuana. He made a quick search of the house and left with the bag of marijuana.

After defendant left Gayden's, FANG members searched the condominium with Gayden's consent. The officers found a duffel bag of marijuana and a box containing an electronic scale in a closet in Gayden's spare bedroom and a duffel bag containing a large sum of money, including the buy money in a closet in Gayden's bedroom.

Officers stopped defendant in his car shortly after he left the informant's home around 9 p.m. and arrested him. They found no weapons or drugs on defendant or in his car. FANG members then met for a briefing and obtained a search warrant for

defendant's home. The home was searched at midnight, and police seized a number
of guns.

(J.A. 109a-10a; *People v. Thompson*, No. 196656 WL 1988580, at *1 (Mich. Ct. App. Dec. 15, 1998).

The guns the police seized from Petitioner's home were found in various places throughout the house. Two were found in the master bedroom: One was under the mattress of the bed and one was in the closet. Both of those guns were loaded. Several more were found in a locked closet in the second story of the house. Petitioner's wife, Bridgit Thompson, claimed ownership of all the guns. While one gun was registered to Petitioner and was in his name, Petitioner's wife claimed that Petitioner had originally bought it for his father, who subsequently gave the gun to her.

On May 2, 1996, Petitioner was convicted by a state court jury of 1) possession with intent to deliver marijuana, Mich. Comp. Laws § 333.7401(2)(c); 2) conspiracy to posses with intent to deliver marijuana, Mich. Comp. Laws § 750.157(a); 3) delivery of marijuana, Mich. Comp. Laws § 333.7401(2)(c); 4) possession of a weapon by a convicted felon, Mich. Comp. Laws § 750.224(f); and 5) felony firearm, Mich. Comp. Laws § 750.227(b). Because Petitioner was a fourth habitual offender, he was sentenced to a two-year prison sentence for the felony firearm conviction to be followed by concurrent terms of forty to sixty years for the felon in possession conviction and ten to fifteen years for the drug convictions. Petitioner appealed his convictions and sentences to the Michigan Court of Appeals, which affirmed them. The Michigan Supreme Court denied Petitioner leave to appeal, though two justices voted to reverse the felony firearm conviction and one voted to grant leave to appeal, thus demonstrating that jurists of reason could differ with respect to the

validity of this conviction. Petitioner timely filed an application for a writ of habeas corpus on January 11, 2001. This writ raised seven claims, only one of which is before this Court.

In a judgment issued on February 22, 2004, the district court denied Petitioner's petition for a writ of habeas corpus on each of Petitioner's seven claims on the ground that they were meritless. Petitioner timely filed Notice of Appeal on March 15, 2004. The district court denied Petitioner's certificate of appealability on all seven claims on March 29, 2004. This Court subsequently granted a certificate of appealability with respect to the single issue of "whether there was sufficient evidence to support the conviction for possession of a weapon during the commission of a felony."

## DISCUSSION

**I.    Petitioner's conviction under the felony firearm statute was supported by sufficient evidence and Petitioner is not entitled to habeas relief**

### 1.    Standard of Review

"In a habeas corpus proceeding, this Court reviews the district court's legal conclusions *de novo* and its factual findings for clear error." *Miskel v. Karnes*, 397 F.3d 446, 451 (6th Cir. 2005). Because Petitioner filed his petition for writ of federal habeas corpus in 2001, the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which became effective in 1996, governs this appeal. *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). According to AEDPA, a federal court may only grant a writ of habeas corpus to a state prisoner if the court finds that the state court decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1). As a matter of clarification, the Supreme Court has held:

> A state-court decision is "contrary to" . . . clearly established precedent if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of the Court and nevertheless arrives at a result different from [that] precedent."

*Early v. Packer*, 537 U.S. 3, 7-8 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

Additionally, the Court has explained:

> [A] state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Taylor*, 529 U.S. at 407. We will look to the law of this Circuit only to the extent that it sheds light on whether a rule constitutes "clearly established federal law." Therefore, while only Supreme Court precedent constitutes clearly established federal law, cases from this Court which interpret and explain those Supreme Court cases are relevant to our review. *See Hill v. Hofbauer,* 337 F.3d 706, 716 (6th Cir. 2003).

In the present case, Petitioner contends that not every element of his conviction was supported by sufficient evidence and that he was entitled to a directed verdict. Such an argument is best understood as proceeding under the "unreasonable application" prong of the statute. Indeed, petitioners who have made this argument in the past have done so under this prong of the statute. In *Biros v. Bagley*, the thrust of the petitioner's argument was that his aggravated murder charge

could not be sustained because the prosecution did not have enough evidence to prove one of the key elements of the conviction.  422 F.3d 379, 386 (6th Cir. 2005).  In that case, while the petitioner did not explicitly state the prong of the statute under which he was proceeding, we analyzed his claim under the first prong.  *Id.*  Likewise, in *Martin v. Mitchell*, this Court viewed the petitioner's argument through the framework of the first prong of the statute.  280 F.3d 594 (6th Cir. 2002).  In that case, the petitioner argued that the prosecution's evidence with regard to his aggravated murder and robbery convictions was not credible with respect to several key issues and that he was therefore entitled to a directed verdict.  *Id.* at 602.  While concluding that credibility of witnesses and evidence was not a proper inquiry for a sufficiency of the evidence claim, we also noted that such an argument is properly understood as an allegation that the decision resulted in an unreasonable application of *Jackson v. Virginia*, 443 U.S. 307 (1979).  *Martin*, 280 F.3d at 617.  Accordingly, we will construe Petitioner's argument in the current case as an argument that the state court's decision resulted in an unreasonable application of *Jackson*.

## 2.      Analysis

### a.      Sufficiency of the Evidence Claim

The Supreme Court has held that "proof of a criminal charge beyond a reasonable doubt is constitutionally required" by the due process guarantee of the Fourteenth Amendment.  *In re Winship*, 397 U.S. 358, 362 (1970).  The holding in that case crystalized the proposition that had thus far been assumed by most courts: that the requirement that criminal charges be proven beyond a reasonable doubt was a constitutional, and not merely a prudential, requirement.  In *Jackson*, the Court further explained the requirement.  Specifically, the Court held that in order for a conviction

to be supported by sufficient evidence, and therefore to be constitutionally permissible, "when viewing the evidence in the light most favorable to the prosecution," it must be possible for some rational trier of fact to "have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. Where this standard is not met, the accused is entitled to a directed verdict on the charge. *Id*. Construed together, *Jackson* and *Winship* created the constitutional standard for the claim of sufficiency of the evidence.

There is a tension inherent in sufficiency of the evidence claims where the underlying conviction is a violation of state law. Generally speaking, federal habeas corpus is not the proper vehicle for state prisoners to seek review of issues of state law. State courts, after all "are the final arbiters of the [state] law's meaning and application" and this Court is not the appropriate forum to adjudicate such issues. *Summers v. Leis*, 368 F.3d 881, 892 (6th Cir. 2004) (alteration added). However, a habeas claim for sufficiency of the evidence does not request a federal court to review the correctness of state law, but instead, to review the evidence to insure that the due process guarantees of the Fourteenth Amendment have not been abridged by a state law conviction. Thus, while the Supreme Court has instructed us to conduct our habeas review "with explicit reference to the substantive elements of the criminal offense as defined by the state law," our role is not to re-analyze the state court's interpretation of state law. *Jackson*, 443 U.S. at 324, n.16. Rather, our review in such cases is limited to determining whether the evidence was so overwhelmingly in favor of the petitioner that it compelled a verdict in his or her favor. Further, relief is only available when the decision results in an objectively unreasonable application of federal law. *Taylor*, 529 U.S. at

409. In other words, we may only review the state court decision to determine whether there was an unreasonable application of federal law, not simply an incorrect application of federal law. *Id*.

There exists some conflict as to the lengths that our deference to the state court must extend. The Supreme Court "stated explicitly that a state-court judgment applying the *Jackson* rule in a particular case 'is of course entitled to deference' on federal habeas." *Wright v. West*, 505 U.S. 277, 290 (1992) (quoting *Jackson*, 443 U.S. at 323). However, the Court has also advised us to perform our own application of the *Jackson* standard instead of merely reviewing the reasonableness of the state court's application. *Wright*, 505 U.S. at 290; *Jackson*, 443 U.S. at 323. It is unclear, then, how much deference should be afforded to the state court with respect to this inquiry. The Court acknowledged this conflict in *Wright*, but declined to resolve it because it was unnecessary for the outcome in that case. *Wright*, 505 U.S. at 290. In *Nash v. Eberlin*, we held that an independent application of *Jackson* was entirely consistent with a deferential review of sufficiency of the evidence. 437 F.3d 519, 525 (6th Cir. 2006). Therefore, the balance this Court has struck requires us to engage in our own application of *Jackson* while still preserving the state court's role as factfinder and ultimate arbiter of Michigan's state laws.

### b. Unreasonable Application of Supreme Court Law

As we stated above, Petitioner's argument is that his conviction resulted in an unreasonable application of federal law. The Supreme Court has offered guidance as to how we should approach such a challenge. According to the Court, we must determine how broad the range of reasonable applications of a particular rule is. Specifically, the Court has held that:

> [i]f a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations.

*Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). Put another way, the question is whether "the state court's application of [federal] law fits within the matrix of [the Supreme Court's] prior decisions." *Id.* at 665. Thus, we necessarily must look to our past applications of the *Jackson* standard to determine how specific the rule is.

As we have held, "[t]he standard for evaluating claims that a conviction is not supported by sufficient evidence presents a very difficult hurdle for the criminal appellant. . . ." *United States v. Maxwell*, 160 F.3d 1071, 1077 (6th Cir. 1998); *see also United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986). In *Scott v. Perini*, we noted that "the standard is not whether the evidence is sufficient to convince the habeas court of the petitioner's guilt beyond a reasonable doubt. Nor does that standard require the prosecution to rule out every hypothesis except that of guilt beyond a reasonable doubt." 662 F.2d 428, 431-432 (6th Cir. 1981) (footnote omitted). Further, all inferences and credibility determinations are drawn in favor of the prosecution. *United States v. Adamo*, 742 F.2d 927, 932 (6th Cir. 1984); *United States v. DeJohn*, 368 F.3d 533, 543 (6th Cir. 2004). Finally, this Court has expressly held that a conviction may be supported wholly by circumstantial evidence and still survive a sufficiency of the evidence challenge. *York v. Tate*, 858 F.2d 322, 328 (6th Cir. 1988). These standards create a broad class of results that may be considered reasonable applications of the *Jackson* standard. Thus, the constitutional standard for sufficiency of the evidence may be

characterized as a general one, which accordingly grants courts more leeway when reaching outcomes. *Yarborough*, 541 U.S. at 663-664.

In the case before us, Petitioner contends that there was insufficient evidence to convict him because the evidence could not show beyond a reasonable doubt that he was guilty of each essential element of the crime. Petitioner also argues that there is an element of felony firearm that was not even presented to the jury, but without which a conviction under the felony firearm statute cannot be sustained. He argues that the failure of the state court to submit that element of the crime to the jury to be proved beyond a reasonable doubt resulted in an unreasonable application of the *Jackson* standard. As *Jackson* directs us, we will review Petitioner's claim with respect to the substantive elements of a felony firearm conviction. Because Petitioner contends that the state court failed to recognize a third essential element of the crime, we have a useful framework to utilize in disposing of Petitioner's arguments. We will begin our review with the undisputed elements of the felony firearm offense, and then discuss Petitioner's argument that there was a third unrecognized element which should have been presented.

### c.     Possession of a Firearm During the Commission of a Felony

To support a conviction for felony firearm under Michigan law, the state must prove beyond a reasonable doubt that a person 1) carried or possessed a firearm; and 2) that he or she did so during the commission or attempted commission of a felony. Mich. Comp. Laws § 750.227(b).

It has long been the law in Michigan that possession of a firearm may be either actual or constructive. *People v. Hill*, 446 N.W.2d 140, 143 (Mich. 1989). A person is in constructive

possession of a firearm "when the location of the weapon is known and it is reasonably accessible to the [person]." *Id*. While Michigan courts have yet to define exactly what constitutes reasonable accessibility, a review of the limited case law that addresses the issue indicates that it is not a difficult standard to meet.

There have been only a few cases that offer guidance as to how accessible a firearm must be in order to be considered reasonably accessible. In *People v. Samuel Williams*, the Michigan Court of Appeals briefly considered the issue. 499 N.W.2d 404, 406-07 (Mich. Ct. App. 1993). In that case, a jury convicted the defendant under the felony firearm statute, finding that he had possessed firearms during the commission of a felony, even though the firearms were found "inside a metal box located within a padlocked wooden safe in the basement of defendant's home." *Id*. On appeal, the court of appeals rejected defendant's claim that he was entitled to a directed verdict on this charge. Without explaining its conclusion in much detail, the court found that the obscure location of the guns was irrelevant because the defendant knew where the guns were and had the ability to access them. *Id*. at 407. Therefore, the court concluded that the question was properly left to the jury.

Similarly, in *People v. Becoats*, the defendant appealed a felony firearm conviction. 449 N.W.2d 687, 687-88 (Mich. Ct. App. 1989). In that case, the defendant was found in possession of cocaine while he was in his bathroom. Firearms were found throughout the rest of the house. *Id*. at 688. Police found two loaded pistols in a bedroom across from the bathroom, an unloaded pistol in a closet of a bedroom next to the bathroom, and another pistol and two rifles in the basement. *Id*. The jury convicted the defendant under the felony firearm statute and defendant appealed. On these facts, the court determined that because the rooms in the house were close to one another, the

defendant could have accessed the firearms at any point if he needed them. *Id*. at 689. Thus, the court concluded that the lower court properly declined to take the issue out of the hands of the jury. *Id*.

The second essential element of a felony firearm conviction is that the possession of the firearm must be during the commission of the felony. Though the record is unclear, we assume that Petitioner's underlying felony for the felony firearm conviction was possession of marijuana with the intent to distribute. Because a conspiracy cannot occur between a defendant and an informant, *See* Mich. Comp. Laws § 750.157(a) cmt. n.6, and Petitioner's delivery of marijuana infraction was not committed until he delivered the marijuana to the informant, *see People v. Burgenmeyer,* 606 N.W.2d 645, 649 (Mich. 2000), the only possible underlying felony that could have given rise to the felony firearm conviction is the possession of marijuana with intent to deliver charge.

As the Michigan Supreme Court has stated, "[p]ossession of drugs occurs when the defendant has dominion and control over them." *Burgenmeyer,* 606 N.W.2d at 649 (citing *People v. Konrad*, 536 N.W.2d 517, 536 (Mich. 1995)). It is entirely irrelevant whether the defendant is in close physical proximity to the drugs. As long as a person "has the power and intention to exercise dominion or control over the drugs either directly or through another person" he or she can said to be in possession of the drugs. *People v. Sammons*, 478 N.W.2d 901, 912 (Mich. Ct. App. 1991). A drug possession offense, then, can be understood to be continuous over time. *See* 606 N.W.2d at 649.

The court of appeals made an observation in *People v. Williams*, which directly informs our thinking in the present case. 538 N.W.2d 89 (Mich. Ct. App. 1995). In that case, the court explicitly

pointed out a relevant difference between the possession of drugs and the possession of a firearm for the purposes of a felony firearm conviction. *Williams*, 538 N.W.2d at 91. The court observed that the purpose of the felony firearm statute was to discourage people from having firearms *at their disposal* during the commission of a felony. *Id*. Accordingly, the court reasoned, unless the gun was readily accessible to a defendant, he or she could not be convicted of felony firearm. *Id*. Drugs, on the other hand, the court reasoned, do *not* need to be at the disposal of the defendant in order for the defendant to be in possession of them. *Id*. Accordingly, possession of drugs is not marked by accessibility or proximity as it is with possession of a firearm, and instead is marked by the ability to assert control over the drugs. *Id*.

In the present case, Petitioner first contends that no rational jury could have found that the firearms were reasonably accessible to him. First, he argues that because his wife claimed ownership over the firearms there is no proof that he was even aware of their presence. Second, Petitioner argues that because several of them were locked up and on an entirely different floor of the house, he could not have been in possession of them.

As we stated above, Supreme Court precedent requires that for a sufficiency of the evidence claim, evidence be viewed in the light most favorable to the prosecution. *Jackson*, 443 U.S. at 319. Two of the firearms were found in the bedroom that Petitioner shared with his wife. One was under the mattress, one was in the closet, and both of these firearms were loaded. Viewing this evidence in the light most favorable to the prosecution, it is entirely possible, and indeed probable, for a rational jury to have concluded that Petitioner at least knew of the existence of these firearms. Further, as we previously noted, circumstantial evidence can provide sufficient evidence to support

a conviction. *York*, 858 F.2d at 328. Further, while Petitioner's wife claimed ownership of all of the firearms, Michigan courts have held that ownership is not a requirement for constructive possession. *See People v. Wolfe*, 440 Mich. 508, 520 (Mich. 1992). The prosecution need only show that Petitioner could have had access to the firearms at sometime during the commission of a felony to overcome Petitioner's sufficiency of the evidence claim.

In response to Petitioner's second argument, we need not address the guns found on the second floor of the house. Petitioner and the informant met to set up the drug deal on the first floor of Petitioner's home with firearms in the next room. Because Petitioner knew where the guns were located and was in the room next to them, we conclude that it was entirely possible for a rational trier of fact to have found, beyond a reasonable doubt, that Petitioner was in constructive possession of the firearms in the master bedroom.

Petitioner additionally points out that the drugs and guns were never in the same place, and thus argues that it was impossible for a rational trier of fact to have found that he simultaneously possessed them. However, according to well-settled Michigan law, this fact is not important. Petitioner and the informant met at Petitioner's house to discuss the sale of the marijuana. Because the firearms were in Petitioner's house, and accessible to him, Petitioner was in constructive possession of the firearms at this point. Because Petitioner still had "the power and intention to exercise dominion or control over the drugs either directly or through another person" while he was at his house, he was in possession of the drugs while he was at home as well. *Burgenmeyer*, 606 N.W.2d at 649. Even though Petitioner was not in the *presence* of the drugs and the guns at the same time, he was still in *possession* of both of them when he was at his house.

Petitioner expresses a concern that this reasoning amounts to little more than punishment for "committing a felony while merely owning a firearm," which the Michigan Supreme Court has expressly stated it wishes to avoid. *Burgenmeyer*, 606 N.W.2d at 648. Although it is unclear how punishing mere ownership of a firearm would fulfill the intent of the felony firearm statute, our role in this review is not to assess the extent to which Michigan courts have effectuated the intent of Michigan's felony firearm statute. We may only grant habeas relief if Petitioner can show that the state court decision resulted in an unreasonable application of federal law or an unreasonable determination of the facts based on the evidence presented at trial. The evidence supporting Petitioner's conviction was sufficient to sustain his conviction, and thus, the state court's decision fits squarely "within the matrix of [the Supreme Court's] prior decisions." *Yarborough*, 541 U.S. at 665. Therefore, habeas relief is not appropriate.

### d. The Logical Nexus

Petitioner's second argument is that a third essential element should have been submitted to the jury and proven beyond a reasonable doubt. Petitioner claims that there was a requirement that there be some logical nexus between the possession of the firearm and the possession of the drugs in order to sustain a felony firearm conviction. In other words, Petitioner argues that the prosecution should have had to prove that Petitioner possessed the firearms and the drugs *in the same place*, not just at the same time. According to Petitioner, this third element of a felony firearm conviction was recently disposed of when the Michigan Supreme Court overruled *Williams* with *Burgenmeyer*. Under *Williams*, Petitioner argues, his conviction could not have been sustained without proof that the firearms and the drugs were in the same place at some point. Petitioner points out that when

*Burgenmeyer* was decided, it "reduced Michigan's pre-established required showing of a nexus in [felony firearm] drug cases." (Pet.'s Br. at 20). Because *Burgenmeyer* was decided after Petitioner's offense, Petitioner argues that it would amount to an Ex Post Facto law to retroactively apply the reduced nexus standard to his case. *Bouie v. City of Columbia*, 378 U.S. 347, 353-54 (1963).

Because Petitioner raises a federal issue, we have jurisdiction to hear his claim. Habeas review permits federal courts to review "questions of federal constitutional law" but not to "revisit state court's interpretation of state law." *Gall v. Parker*, 231 F.3d 265, 303 (6th Cir. 2000). Here, Petitioner does not ask this court to evaluate the merits of either the *Williams* or *Burgenmeyer* decisions. Instead, he asks us to hold that, as a matter of federal constitutional law, the Michigan courts applied Michigan law in an *ex post facto* fashion in his case. For this reason, we have jurisdiction. We will review this argument as proceeding under the "unreasonable application" prong of the habeas statute. Petitioner's argument is essentially that the Michigan courts eliminated an element of the felony firearm offense subsequent to Petitioner's offense and then applied the new standard to support Petitioner's conviction in violation of *Jackson*. This Court has previously held that such an argument is properly understood to proceed under the "unreasonable application" prong of the habeas statute. *See Gall*, 231 F.3d at 304.

In order to assess the merits of Petitioner's argument, we must first look to the holdings of *Williams* and *Burgenmeyer*. In 1995, the Michigan Court of Appeals decided *Williams*. In that case, defendant Williams received a felony firearm conviction for possession of cocaine while he was in possession of a firearm. 538 N.W.2d at 90. The cocaine and gun were found together in Williams' bedroom during a raid that took place while Williams was not at home. *Id*. He appealed this

conviction, arguing that because he was not at home when the gun was discovered, he could not be said to have been in possession of the gun. *Id.* The court agreed with this reasoning and reversed the conviction. *Id.* at 91.

Inexplicably, *Williams* focused on whether the defendant had possession of the firearm at the time of the police raid, contrary to the plain wording of the statute, which focused on the time of the commission of the felony. Mich. Comp. Laws § 750.227(b). The cases that came before *Williams* did not share this focus, and those that came after it viewed that aspect of the holding as an anomaly and continued to interpret the felony firearm statute as it was written. *See, e.g.*, *People v. Buckallew*, 1999 Mich. App. LEXIS 2842 (Mich. Ct. App. 1999) (unpublished) ("The firearm must be readily accessible to the defendant at the time the underlying felony is committed; in other words, the time of the defendant's arrest is not the determinative factor."); *Becoats*, 449 N.W.2d at 687-88; *People v. Terry*, 335 N.W.2d 116, 118 (Mich. Ct. App. 1983); *People v. Elowe*, 272 N.W.2d 596, 598 (Mich. Ct. App. 1978).

As Petitioner correctly notes, the Michigan Supreme Court partly overruled *Williams* with *Burgenmeyer* in 2000. However, *Burgenmeyer* overruled *Williams* with respect to a limited issue, which is of no consequence in this case: *Burgenmeyer* overruled *Williams* only insofar as *Williams* held that the proper question to sustain a felony firearm conviction was whether a defendant was in possession of a firearm at the time of arrest instead of the time of the commission of a felony. *Id.* at 649. Therefore, the extent to which *Williams* is no longer good law has no relevance on the present case. All *Burgenmeyer* did was overrule *Williams*' anomalous holding to bring it in line with the rest of the Michigan case law.

Further, even under *Williams*, there is no sign of this logical nexus element that Petitioner attempts to have applied in the present case. Petitioner incorrectly asserts that *Burgenmeyer* introduced the proposition that in order to prove constructive possession of drugs, all that needs to be shown is that "the defendant knowingly has the power and intention to exercise dominion or control over the drugs either directly or through another person." *Id*.

The general rule that proximity is not required for constructive possession of drugs is not unique to *Burgenmeyer*. That has been the rule that governed these cases prior to the *Burgenmeyer* decision, including *Williams*. *Williams*, 538 N.W.2d at 91; *see, also*, *Sammons*, 478 N.W.2d at 912; *Konrad*, 536 N.W.2d at 521. Even under *Williams*, the fact that Petitioner had the ability to exercise control over the drugs at any given time would have put him in constructive possession of them while he was at his house. *Williams*, 538 N.W.2d at 91. Thus, this is not a situation where failure to prove the third element renders review under *Jackson* meaningless. Because the element that Petitioner wishes to have proven to sustain his conviction was *never* an essential element of the conviction, failure to submit it to the jury does not implicate Petitioner's due process rights. Thus, we find that the state court decision did not result in an unreasonable application of federal law as defined by Supreme Court precedent. It is entirely possible for a rational finder of fact to have convicted Petitioner under the felony firearm statute based on the evidence presented; therefore, Petitioner's conviction was properly affirmed.

**CONCLUSION**

For the foregoing reasons, we **AFFIRM** the order of the district court and **DENY** Petitioner's petition for writ of habeas corpus.