NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0681n.06
Filed: September 19, 2007

No. 06-1259

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| PETE CANNON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| BLAINE LAFLER, Warden, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |

Before: SUTTON and McKEAGUE, Circuit Judges; and FORESTER, District Judge.[*]

SUTTON, Circuit Judge. Pete Cannon appeals from the denial of his habeas corpus petition, claiming that there was insufficient evidence to support his convictions. Because the evidence was sufficient to support the jury's verdict, we affirm.

I.

On March 24, 1999, after making a controlled purchase of cocaine from Jacqueline Bowdery at a house on North Fifth Street in Saginaw, Michigan, the police raided and searched the house. The police found Pete Cannon in one room, cocaine in another room and four more people in other

---

[*] The Honorable Karl S. Forester, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

rooms. A search of Cannon yielded his Veterans Administration patient data card, which listed his address as 1712 Boxwood Street, also in Saginaw.

Later that night, shortly after midnight, the police raided and searched the house on Boxwood, which Cannon's brother owned. There, they found 41.72 grams of cocaine in the detached garage; three guns, marijuana and nearly $3,000 in cash in the master bedroom; a cable television bill addressed to Cannon at the Boxwood house; and a photograph of Cannon and his "off-again-on-again" girlfriend, Janice Coleman, JA 382. A search of Coleman, who was the only person at the Boxwood house at the time of the raid, yielded a marked $20 bill used by the police in the controlled purchase at North Fifth.

A jury convicted Cannon of three charges related to North Fifth—possession with intent to deliver less than fifty grams of cocaine, Mich. Comp. Laws § 333.7401(2)(a)(iv); conspiracy to possess with intent to deliver less than fifty grams of cocaine, *id.* § 750.157a; and maintaining a drug house, *id.* § 333.7405(1)(d). And it convicted him of three charges related to Boxwood—possession with intent to deliver less than fifty grams of cocaine, *id.* § 333.7401(2)(a)(iv); possession of marijuana, *id.* § 333.7403(2)(d); and possession of a firearm during the commission of a felony, *id.* § 750.227b(1). The Michigan Court of Appeals affirmed the three convictions related to North Fifth, but it vacated the three related to Boxwood on insufficiency-of-the-evidence grounds. *See People v. Cannon*, No. 232529, 2002 WL 31187868, at *2–5 (Mich. Ct. App. Oct. 1, 2002). Both parties appealed. While the Michigan Supreme Court denied Cannon's application for leave to appeal, *People v. Cannon*, 656 N.W.2d 527 (Mich. 2003), it granted the State's application and vacated the

court of appeals' decision, *People v. Cannon*, 659 N.W.2d 230 (Mich. 2003). On remand, the court of appeals affirmed all of Cannon's convictions. *See People v. Cannon*, No. 232529, 2003 WL 21752819, at *7 (Mich. Ct. App. July 29, 2003).

Cannon filed a petition for habeas corpus relief in the federal district court, alleging that there was insufficient evidence to support his convictions. The district court denied the petition, *Cannon v. Lafler*, No. 04-CV-72447-DT, 2005 WL 3556200, at *9 (E.D. Mich. Dec. 28, 2005), but granted Cannon a certificate of appealability on his sufficiency-of-the-evidence claims related to the Boxwood convictions.

## II.

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), we may grant the writ only if the state court's decision on the merits (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). In assessing whether sufficient evidence exists to convict under the Due Process Clause of the Fourteenth Amendment, the question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Under this standard, "a federal habeas court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not

appear affirmatively in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326.

A.

Cannon argues that the State did not satisfy the possession element of the cocaine and marijuana charges arising from the drugs found at the Boxwood address. *See People v. Wolfe*, 489 N.W.2d 748, 752 (Mich. 1992); *People v. Eggers*, No. 256618, 2006 WL 335689, at *3 (Mich. Ct. App. Feb. 14, 2006). Under Michigan law, either physical possession or "constructive possession will suffice" to establish this element of the offenses. *People v. Johnson*, 647 N.W.2d 480, 486 (Mich. 2002); *Wolfe*, 489 N.W.2d at 753. "Constructive possession exists when the totality of the circumstances indicates a sufficient nexus between defendant and the contraband," *Johnson*, 647 N.W.2d at 486—which the government may show by establishing that the defendant has "the right to exercise control" over the controlled substances and knows of their presence, *Wolfe*, 489 N.W.2d at 753; *see also People v. Burgenmeyer*, 606 N.W.2d 645, 649 n.12 (Mich. 2000) ("Possession of drugs occurs when the defendant has dominion and control over them. . . . [or] when the defendant is in proximity to the drugs and has control over them."). Nothing prevents possession, moreover, from being "joint, with more than one person actually or constructively possessing" the drugs. *Wolfe*, 489 N.W.2d at 753.

The jury did not exceed the modest boundaries of rationality in concluding that Cannon—constructively or perhaps jointly—possessed the cocaine and marijuana found at the

Boxwood address. The government connected Cannon to the Boxwood address through the following evidence: testimony from the police that "they had observed defendant at the Boxwood residence on a number of occasions," *Cannon*, 2003 WL 21752819, at *4; Cannon's two-year-old VA patient data card showing his address as 1712 Boxwood; an envelope addressed to Cannon at the Boxwood address postmarked July 8, 1998; a cable television bill found on the kitchen table at Boxwood and addressed to Cannon at that address for cable service provided there through October 1998; an energy bill for the North Fifth residence in the name of either Cannon or his son (both of whom went by the name of Pete Woods) found on the kitchen table at Boxwood; evidence that "numbers encoded in the pager that defendant possessed at the North Fifth residence matched numbers encoded into a pager that the police found at the Boxwood residence," *id.* at *5; a photograph of Cannon and Coleman found at Boxwood; testimony from Coleman that "[p]robably some clothes or something" at Boxwood belonged to Cannon, JA 387–88; and testimony that the $20 bill found on Coleman at Boxwood was the same $20 bill used during the controlled buy at North Fifth. This evidence would permit a rational trier of fact to conclude that Cannon lived at the Boxwood address, establishing "a sufficient nexus" between him and the drugs, *Johnson*, 647 N.W.2d at 486, and in particular that he had "the right to exercise control" over the drugs and knew of their presence, *Wolfe*, 489 N.W.2d at 753.

But that was not all. The government also introduced considerable evidence concerning Cannon's activities at the North Fifth house and the connection between that house and the Boxwood residence. The substantial volume of drugs and cash found at Boxwood buttressed the government's

theory that Cannon used the two houses together in his drug operations—with the North Fifth house being used to sell the drugs (the drug house) and the Boxwood house being used to store the drugs and proceeds (the stash house). An expert witness testified that cocaine dealers often use two locations. And Bowdery, the seller from the North Fifth address, testified that Cannon provided her with only a daily supply of cocaine, that Cannon did not live at North Fifth and that Cannon would stop by North Fifth, after she paged him, to replenish her supply and collect the day's take. Consistent with the theory that Boxwood was a stash house, the cocaine and cash found at Boxwood was far greater than the amounts found at North Fifth. Viewing all of this evidence in the light most favorable to the government, we cannot say that the jury's Boxwood verdicts were irrational.

Cannon persists that, while he had lived at the Boxwood address in the past, he did not live there at the time of the search and did not know about or have any control over the drugs found there. The documents linking him to Boxwood, he points out, were several months old or in some cases several years old, and Coleman testified that neither she nor Cannon had lived at Boxwood for approximately 16 months. Even if all of this were true, however, it would not explain why some of those documents were still located at Boxwood—on the kitchen table, of all places—or why what appears to have been his pager was found there. What is more, the jury had ample reason to discredit Coleman's testimony. *See Cannon*, 2003 WL 21752819, at *4 ("[T]he credibility of [Coleman's] testimony was weakened because it was inconsistent with her testimony at the preliminary examination."). The absence of evidence suggesting that someone else lived at Boxwood—and Coleman's statement that she did not know if anyone was living at Boxwood, despite her claiming

to have done her laundry there for approximately 16 months—also undercuts Cannon's argument. So does the fact that Cannon could have used the Boxwood residence as a stash house without residing there on a full-time basis—all of which would be consistent with Coleman's acknowledgment that some of the items found at the Boxwood house probably belonged to Cannon, her admission that she still had a key to the house and her presence at Boxwood after midnight on the night of the arrest with the marked $20 bill from North Fifth Street.

Cannon also points to the lack of direct evidence linking him to the drugs at Boxwood. This contention misses the mark, however, because "[c]ircumstantial evidence alone is sufficient to sustain a conviction" in this area, *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999), and a rational jury could have concluded from the circumstantial evidence here that Cannon possessed the drugs found at Boxwood. This court previously has rejected sufficiency-of-the-evidence challenges to drug-possession convictions resting entirely on circumstantial evidence similar to that presented here. *See, e.g.*, *United States v. Hartman*, 213 F. App'x 396, 401–02 (6th Cir. Jan. 9, 2007) (indicating that there was no "direct evidence" linking the defendant to the drugs in question or showing that the defendant "had recently resided at the premise" where the drugs were found, but nonetheless holding that there was sufficient evidence to support drug-possession and drug-distribution charges because the "government presented a significant amount of evidence demonstrating that [defendant] lived at the residence" where the drugs were found, including "[m]ultiple items in the house [that] had [defendant's] name on them").

Cannon also argues that three cases from other circuits support his insufficiency claim. But those cases involved prosecutions premised on guilt by association based on the defendants' mere "proximity to drugs possessed by other people." *United States v. Vasquez-Chan*, 978 F.2d 546, 551 (9th Cir. 1992) (internal quotation marks omitted); *see also United States v. Brown*, 3 F.3d 673, 682 (3d Cir. 1993) ("[W]e believe that the evidence against [one co-defendant] is consistent with that of someone with access to or residing at the . . . residence, but with no control over the drugs or drug packaging activities of [another co-defendant] and others occurring therein."); *United States v. Zeigler*, 994 F.2d 845, 848 (D.C. Cir. 1993) (same). Given Cannon's extensive drug operations at North Fifth and his connections to Boxwood, he cannot tenably say that his conviction sprang from mere guilt by association or guilt by proximity.

## B.

Cannon also challenges the sufficiency of the evidence relating to his conviction for possession of a firearm during the commission of a felony. He principally contends that the State failed to prove that he possessed the gun and cocaine at the same time. "To support a conviction for felony firearm under Michigan law, the state must prove beyond a reasonable doubt that a person 1) carried or possessed a firearm; and 2) that he or she did so during the commission or attempted commission of a felony." *Thompson v. Bock*, 215 F. App'x 431, 437 (6th Cir. Jan. 31, 2007); *see also* Mich. Comp. Laws § 750.227b(1). Possession of a firearm, like possession of drugs, may be actual or constructive as well as joint or exclusive. *See People v. Hill*, 446 N.W.2d 140, 143 (Mich.

1989). Constructive possession of a firearm exists "if the location of the weapon is known and it is reasonably accessible to the defendant." *Id.*

For many of the same reasons that a rational jury could find that Cannon constructively possessed the cocaine and marijuana found at the Boxwood address, it could find that he possessed the guns found in the bedroom there and that he possessed them at the same time that he possessed the drugs in the detached garage. A jury could fairly believe that, while staying at the Boxwood address, Cannon kept the guns close at hand in the bedroom so that he could protect the cocaine in the detached garage. *See Thompson*, 215 F. App'x at 439 (explaining that, under Michigan's felony-firearm law, the State must prove that the firearm was "readily accessible" to the defendant to support a felony-firearm conviction because the aim of the felony-firearm statute is "to discourage people from having firearms *at their disposal* during the commission of a felony").

Not true, says Cannon, because the "proximity between the firearms and cocaine in this case is simply too attenuated to support a reasonable inference that the firearms were accessible if or when [he] possessed the cocaine." Br. at 29. But as Cannon himself recognizes elsewhere in his brief, the key inquiry is whether "the *defendant* . . . was in proximity of the firearm" when he possessed the drugs, Br. at 28 (emphasis added), not whether the *drugs* were near the firearm. *See Cannon*, 2003 WL 21752819, at *5 ("[I]t is not the proximity of the firearm to the drugs, but defendant's proximity to the firearm that is important."). A rational jury could fairly find that Cannon kept the guns close at hand in the bedroom to protect the drugs in the nearby garage. *Cf.*

*United States v. Oglesby*, 210 F. App'x 503, 505–06 (6th Cir. Jan. 30, 2007) (discussing the "fortress theory," which "holds that if it reasonably appears that the firearms found on the premises controlled . . . by a defendant and in his actual or constructive possession are to be used to protect the drugs or otherwise facilitate a drug transaction, then such firearms are used 'during and in relation to a drug trafficking crime'").

III.

For these reasons, we affirm.